No. 2--06--1004          Filed: 7-30-07

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| DANIEL G. FEDORSKI, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--MR--500 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE | ) | |
| AURORA POLICE PENSION FUND, | ) | |
| DANIEL HOFFMAN, as President of the | ) | |
| Board of Trustees of the Aurora Police Pension | ) | |
| Fund, EDWARD BEALE, as Secretary of | ) | |
| the Board of Trustees of the Aurora Police | ) | |
| Pension Fund, and JOHN PAVLINEC, JOHN | ) | |
| DUGGAN, and ANDREW TA, as Trustees | ) | |
| of the Aurora Police Pension Fund, | ) | Honorable |
| | ) | Michael J. Colwell, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Daniel G. Fedorski, appeals from an order of the circuit court of Kane County affirming the decision of the Board of Trustees (Board) of the Aurora Police Pension Fund (Fund) denying his application for a line-of-duty disability pension and instead awarding him only a nonduty disability pension. We affirm.

At the hearing on his application, plaintiff testified that on January 31, 2003, he was employed by the City of Aurora as a police officer and was assigned to work as a plainclothes investigator.

Plaintiff's duties included investigating crimes, identifying witnesses, interviewing suspects, and compiling evidence for prosecutions. On the date in question, plaintiff was functioning as a "street level" evidence technician. Plaintiff testified that the Aurora police department employs 10 to 12 evidence technicians, all of whom are police officers rather than civilian personnel. Plaintiff was assisting Investigators Trujillo and Coursey in a murder investigation and was responsible for taking photographs of a crime suspect and other individuals who were taking part in a lineup at the Kane County jail. The lineup was conducted at the request of the Kane County State's Attorney's office.

After the lineup was completed, plaintiff and Investigators Trujillo and Coursey left the jail in an unmarked squad car. Plaintiff was sitting in the backseat of the vehicle and had brought a camera, film, and some paperwork with him. The officers were returning to Aurora, but they planned to stop en route to meet another officer somewhere along Farnsworth Road. Plaintiff testified that the camera he had been using was borrowed, and they were meeting the other officer so that plaintiff could return it. Plaintiff had tasks related to the investigation that he needed to complete at the police station. He needed to contact the State's Attorney, enter evidence, and complete a report. While the vehicle was stopped at a red light, it was struck from behind. It is undisputed that, as a result of the collision, plaintiff suffered injuries that disabled him from performing the duties of a police officer.

Section 3--114.1(a) of the Illinois Pension Code (Code) provides, in pertinent part, that a police officer found to be disabled for service in the police department "as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty *** shall be entitled to a disability retirement pension equal to *** 65% of the salary attached to the rank on the police force held by the officer at the date of suspension of duty or retirement." 40 ILCS 5/3--114.1(a) (West 2002). A police officer who becomes disabled as a result of any cause other than an act of

duty is entitled to a pension equal to 50% of the salary attached to the officer's rank at the date of suspension of duty or retirement. 40 ILCS 5/3--114.2 (West 2002). The Board concluded that plaintiff was not performing an act of duty at the time of the accident giving rise to his disabling injuries and was therefore entitled only to a nonduty pension. Plaintiff filed a complaint for administrative review against the Board and each of its trustees. As noted, the trial court affirmed the Board's decision. This appeal followed.

When a party to an administrative review proceeding takes an appeal, the appellate court reviews the administrative agency's decision, not the trial court's. Harroun v. Addison Police Pension Board, 372 Ill. App. 3d 260, 261-62 (2007). The agency's findings of fact will be upheld unless against the manifest weight of the evidence, but rulings of law are reviewed de novo. Harroun, 372 Ill. App. 3d at 262. An administrative agency's decision on a mixed question of fact and law will be upheld unless clearly erroneous. Harroun, 372 Ill. App. 3d at 262. "A mixed question exists where the historical facts are admitted or established, the rule of law is undisputed, and the only issue is whether the facts satisfy the settled statutory standard." Dowrick v. Village of Downers Grove, 362 Ill. App. 3d 512, 515 (2005). Here, the relevant facts are undisputed, and the parties' dispute hinges on the interpretation of the term "act of duty," as used in section 3--114.1(a) of the Code. Accordingly, our review is de novo. See Alm v. Lincolnshire Police Pension Board, 352 Ill. App. 3d 595, 598 (2004); White v. City of Aurora, 323 Ill. App. 3d 733, 735 (2001).

For purposes of section 3--114.1(a), the definition of "act of duty" set forth in section 5--113 of the Code (40 ILCS 5/5--113 (West 2002)) applies. See, e.g., Alm, 352 Ill. App. 3d at 598. As pertinent here, section 5--113 defines "act of duty" as "[a]ny act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman

by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment." 40 ILCS 5/5--113 (West 2002). Illinois courts have had a number of opportunities to consider the scope of this definition. We have noted that "[o]ur supreme court has expressly rejected the notion that the term 'special risk' encompasses only inherently dangerous activities." Alm, 352 Ill. App. 3d at 599, citing Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund, 114 Ill. 2d 518, 521 (1986). In Johnson, a citizen involved in a traffic accident requested assistance from a police officer who was directing traffic. As the officer walked across the street in response to the request, he slipped and suffered a disabling injury. Even though crossing the street did not itself involve any special risk, our supreme court concluded that the officer was entitled to a line-of-duty disability pension because he was performing an act of duty-- responding to a citizen's request for assistance--when he was injured. Johnson, 114 Ill. 2d at 522. As we noted in Alm, "Johnson teaches that in determining whether an officer is entitled to a line-of-duty benefit, '[t]he crux is the capacity in which the police officer is acting' rather than the precise mechanism of injury." Alm, 352 Ill. App. 3d at 599, quoting Johnson, 114 Ill. 2d at 522. Johnson "preserves the requirement that an act of duty be something involving a risk not shared by ordinary citizens." Morgan v. Retirement Board of the Policemen's Annuity & Benefit Fund, 172 Ill. App. 3d 273, 276 (1988). But "an officer performing duties involving special risks will be entitled to line-of-duty benefits even if the immediate cause of injury is an act involving only an ordinary risk." Alm, 352 Ill. App. 3d at 599.

Of course, not all police work involves special risks. Comparing Wagner v. Board of Trustees of the Police Pension Fund, 208 Ill. App. 3d 25 (1991), to Morgan helps illustrate this point. In Wagner, a police officer who was trying to serve a notice to appear suffered a disabling injury when

his leg fell through a rotted plank on a porch. Although the injury could have happened to anyone walking across the porch for any reason, the officer suffered the injury while performing an act involving special risk. A police officer serving a notice to appear faces the risk of a hostile, and perhaps violent, response from the intended recipient of the notice. Thus, the Wagner court noted that "[w]hile the act of walking across a porch is hardly unique to police officers, serving notices to appear generally is." Wagner, 208 Ill. App. 3d at 29.

In contrast, in Morgan an officer suffered a disabling injury when a chair rolled out from under him as he was at his desk taking a police report from a citizen. The Morgan court concluded that the injury did not occur in the performance of an act of duty. In distinguishing Johnson, the Morgan court explained:

"While no civilian occupation may involve completing police reports, countless civilian occupations do involve the completion of reports of one type or another. Moreover, we take judicial notice of the fact that, while completing such reports, many civilians sit or attempt to sit in chairs. As such, we cannot say that completing police reports, albeit a function peculiar to police officers, inherently involves special risk not ordinarily assumed by a citizen in the ordinary walks of life." Morgan, 172 Ill. App. 3d at 276-77.

In White, a divided panel of this court held that a patrol officer was not performing an act of duty when he slipped and suffered a disabling injury upon exiting his patrol car to issue a parking ticket. The Aurora police department required its police officers to issue parking tickets (White, 323 Ill. App. 3d at 734), but the department also employed civilians to issue tickets (White, 323 Ill. App. 3d at 736). The White majority concluded that the circumstances were more closely analogous to those of Morgan than to those of Johnson:

"Just as filling out police reports does not involve a special risk, neither does exiting a car to place a traffic ticket on a windshield. Both filling out a report and exiting a car to place a notice or flyer are acts that ordinary citizens assume. Numerous civilian occupations involve filling out citations and placing them where the violator will see them. In fact, White acknowledged that parking regulations are enforced by Aurora employees who are not police officers. Moreover, like the Morgan court, we take judicial notice of the fact that, while completing such citations, many civilians exit automobiles. As such, we cannot say that placing a citation on a vehicle inherently involves a special risk not ordinarily assumed by citizens in the ordinary walks of life." White, 323 Ill. App. 3d at 736.

But see Alm, 352 Ill. App. 3d at 603, quoting Johnson, 114 Ill. 2d at 522 (noting that, like the officer in Johnson, the officer in White was acting in a capacity that required him to have his " 'attention and energies directed towards being prepared to deal with any eventuality' ").

With these decisions in mind, we conclude that plaintiff was not performing an act of duty when he was injured. As discussed above, the fact that the injury could have befallen anybody traveling in an automobile for any reason does not, in itself, foreclose a line-of-duty disability pension. Our focus is not on the precise mechanism of the injury, but on the capacity in which the officer was acting when injured, and, in particular, the special risks a police officer faces when acting in such a capacity. Accord Morgan, 172 Ill. App. 3d at 276 (noting that Johnson "reaffirm[ed] the existence of the special risk element in acts of duty and the distinction between such acts and 'any cause other than' such acts when entitlement to disability benefits is at issue"). Had plaintiff been acting in a capacity involving a special risk when he was injured, he would have been entitled to a line-of-duty

disability pension even though the immediate cause of the injury was an act--riding in an automobile--involving only ordinary risk. Plaintiff argues that he was acting in such a capacity. We disagree.

Plaintiff contends that he was "involved in an act of police duty involving a special risk as an investigator performing the task of an evidence technician in assisting a state's attorney at a lineup." There are several problems with the argument. First, it is not altogether clear that evidence technicians face any particular risks while photographing lineups. Moreover, while within the Aurora police department the duty of an evidence technician (and the associated risks, if any) may be unique to police officers, other law enforcement agencies may very well employ civilians to perform this sort of work, and those civilians would presumably face the same risks (if any) that plaintiff faced while acting in this particular capacity.

More importantly, however, whether or not plaintiff was "performing the task of an evidence technician" when the accident occurred, he was not acting in a capacity that entailed any special risk at that particular time. Plaintiff maintains that he was involved in an "ongoing investigation." His argument, in essence, is that he was acting in the capacity of an investigator or an evidence technician until he completed these tasks. None of the cases hold that the title of an officer's duty assignment is determinative of the capacity in which he is acting. Rather the cases illustrate that the proper focus is on the particular activities the officer is engaged in when he or she is injured. Thus, in Johnson, the officer was entitled to a line-of-duty disability pension based on the risk he faced in his capacity as an officer responding to a citizen's request for assistance. In Wagner, the officer's right to a line-of-duty disability pension was a function of the hazards of acting in the capacity of an officer serving a notice to appear. In Morgan, the refusal to award a line-of-duty disability pension reflected the lack

of any special risk to an individual acting in the capacity of a police officer taking a police report from a citizen.

The majority opinion in <u>White</u> is consistent with this view. It cannot be gainsaid that patrol officers face a variety of special risks not encountered by citizens in ordinary walks of life. Yet the fact that the officer in <u>White</u> was assigned to patrol duty was not enough to justify a line-of-duty disability pension where the <u>White</u> majority was of the view that the particular function the officer was fulfilling when injured--issuing a traffic a ticket--did not itself involve any such risk. Although the majority opinion in <u>Alm</u> criticized the <u>White</u> court's conclusion that issuing a traffic ticket does not involve a special risk, both opinions are consistent with our focus on the specific activity the officer is performing rather than the general nature of the officer's duty assignment.

At the time of the accident, plaintiff was merely riding in an automobile and he faced risks essentially no different from those faced by any other automobile passenger. Nothing related to his duties as an evidence technician increased that risk. We therefore conclude that he was not performing an act of duty as defined by statute.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

BYRNE and ZENOFF, JJ., concur.