SECOND DIVISION
April 5, 2011

No. 1-09-3151

EARL L. FILSKOV,                                 ) Appeal from the
                                                 ) Circuit Court of
            Plaintiff-Appellee,                  ) Cook County
                                                 )
                                                 )
            v.                                   ) No. 09 CH 18764
                                                 )
                                                 )
THE BOARD OF TRUSTEES OF THE NORTHLAKE           )
POLICE PENSION FUND,                             ) Honorable
                                                 ) Peter Flynn,
            Defendant-Appellant.                 ) Judge Presiding.


            JUSTICE HARRIS delivered the judgment of the court, with opinion.
            Justice Connors concurred in the judgment and opinion.
            Presiding Justice Cunningham dissented, with opinion.

**OPINION**

On October 5, 2007, plaintiff, police officer Earl Filskov's assigned duty was to patrol the

streets looking for gang activity. After finishing preparing station reports he returned to his

police vehicle along with two other officers. While entering the rear seat he suffered an injury to

his foot. He applied to the Northlake Police Pension Fund (Pension Board) for a line-of-duty

disability pension benefit or, in the alternative, a not-on-duty disability pension benefit. The

Pension Board unanimously voted to deny Officer Filskov's application for a line-of-duty

disability pension benefit, but granted his application for a not-on-duty disability pension benefit.

On administrative review, the circuit court reversed the Pension Board's decision and entered

judgment in favor of Officer Filskov for an on-duty disability pension benefit. The Pension

Board appeals from the circuit court's judgment. The facts of this case establish that Officer

Filskov did not suffer a line-of-duty disability. The Pension Board's examination of the legal effect of those facts and its decision that the injury did not result from the performance of an act of duty were not clearly erroneous. Accordingly, we reverse the decision of the circuit court, as Officer Filskov's injury was not sustained while performing an act of duty as required under section 3-114.1(a) of the Illinois Pension Code (Pension Code). 40 ILCS 5/3-114.1(a) (West 2008).

## JURISDICTION

The circuit court reversed the Pension Board's decision and entered judgment in favor of Officer Filskov on October 28, 2009. On November 16, 2009, the Pension Board filed its notice of appeal. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb.1, 1994); R. 303 (eff. May 30, 2008).

## BACKGROUND

On October 5, 2007, Officer Filskov was on duty and in uniform as a member of the city of Northlake police force. Officer Filskov was assigned to an unmarked police car along with two other officers. He testified that all three officers were at the Northlake police station finishing up either an arrest or a report. All three officers were assigned to the Neighborhood Enforcement Team (NET), which is a gang suppression unit. Officer Filskov testified that NET officers "are constantly on the street as much as possible looking for any active gang activity, any narcotic related activity" in addition to "all the other normal work that a uniform patrol officer would do." At approximately 10:30 p.m., Officer Filskov and the other two officers left

the police station and walked to the squad car in the police station's parking lot to resume patrol.

They had yet to resume their patrol and were not acting in response to a call for service. As he

was standing outside the open door of the squad car, the officer driving the car inadvertently put

the car in drive and drove over Officer Filskov's foot. He described the incident, testifying that

as he opened the backseat car door to get into the backseat, he noticed some items on the seat.

While standing on the parking lot pavement he bent over to move the items when the car

unexpectedly moved forward and a rear tire injured his foot.

Based on his injuries from the incident, Officer Filskov applied for disability benefits to

the Pension Board, claiming a line-of-duty disability pension benefit or, in the alternative, a not-

on- duty disability pension benefit. Following a hearing on February 20, 2009, the Pension

Board issued its written decision and order on May 20, 2009. The Pension Board found that

Officer Filskov "is physically disabled and that his disability renders necessary his suspension or

retirement from police service." The Board found "the performance of an act of duty" did not

cause or contribute to Officer Filskov's disability under the Pension Code. The Pension Board

explained its conclusion:

> "The Pension Board has extensively reviewed the evidence
> in the administrative record and the testimony from the hearing to
> assess whether the Applicant was involved in an act of police duty
> inherently involving special risk not ordinarily assumed by a
> citizen in the ordinary walks of life. There is no evidence in the
> record to suggest that the Applicant was involved in an 'act of

3

duty.' Rather, the Applicant faced the same risk ordinarily assumed by any citizen who chooses to become a passenger in a vehicle.

Certainly the Pension Board is aware of the fact that because such an injury could have befallen anybody who chooses to become a passenger in a vehicle does not, in itself, foreclose a line of duty disability pension. The key consideration is the capacity in which the Applicant was acting. To this extent, the Applicant testified that the Applicant and the other officers were not responding to a call or in any way involved in an act of police duty inherently involving a special risk. The Applicant was merely standing next to the squad car when Officer Mango mistakenly drove over his left foot."

The Pension Board granted Officer's Filskov's alternative request that he be given a not-on-duty disability pension. On administrative review, the circuit court reversed the Pension Board's decision and entered judgment in favor of Officer Filskov. The Pension Board appeals from the circuit court's judgment.

## ANALYSIS

In cases involving administrative agency decisions, such as that of the Pension Board, we review the decisions of the agency and not the conclusion of the circuit court. *Wade v. City of North Chicago Police Pension Board,* 226 Ill. 2d 485, 504 (2007). The Pension Board's decision

is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq* (West 2008));  40 ILCS 5/3-148 (West 2008).  The Administrative Review Law provides that the scope of our review:

> "shall extend to all questions of law and fact presented by the entire record before the court.  No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court.  The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct."
>
> 735 ILCS 5/3-110 (West 2008).

The amount of deference we must give to the decision of the Pension Board "depends upon whether the question presented is a question of fact, a question of law, or a mixed question of law and fact." *Marconi v. Chicago Heights Police Pension Board,* 225 Ill. 2d 497, 532 (2006).  When reviewing questions of fact, the reviewing court must determine whether the decision of the agency is against the manifest weight of the evidence.  *Id.*  Questions of law, however, are reviewed *de novo*.  *Id.*  When the question presented is a mixed question of law and fact, as in this case, the clearly erroneous standard is applied.  *Id.*  See also *Merlo v. Orland Hills Police Pension Board,* 383 Ill. App. 3d 97, 99-100 (2008) (applying clearly erroneous standard in answering whether a police officer should receive line-of-duty pension benefit); *Jones v. Board of Trustees of the Police Pension Fund,* 384 Ill. App. 3d 1064, 1068 (2008) (agreeing with *Merlo* and applying a clearly erroneous standard to line of duty pension benefit issue).  A mixed question of law and fact "involves an examination of the legal effect of a given set of facts ." *City*

No.1-09-3151

*of Belvidere v. Illinois State Labor Relations Board,* 181 Ill. 2d 191, 205 (1998). Our supreme

court has described this standard as "between a manifest weight of the evidence standard and a *de*

*novo* standard so as to provide some deference to the [agency's] decision." *Id.* An agency's

"decision will be deemed 'clearly erroneous' only where the reviewing court, on the entire

record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM*

*Messenger Service, Inc. v. Department of Employment Security,* 198 Ill. 2d 380, 395 (2001),

(quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)). The plaintiff

bears the burden of proof in an administrative proceeding. *Marconi* 225 Ill. 2d at 532-33.

A line-of-duty pension benefit is provided for in section 3-114.1(a) of the Pension Code,

which states:

> " Disability Pension - - Line of duty
>
> > (a) if a police officer as the result of sickness, accident or
> >
> > injury *incurred in or resulting from the performance of an*
> >
> > *act of duty*, is found to be physically or mentally disabled
> >
> > for service in the police department, so as to render
> >
> > necessary his or her suspension or retirement from the
> >
> > police service, the police officer shall be entitled to a
> >
> > disability retirement pension ***. (Emphasis added.) 40
> >
> > ILCS 5/3-114.1(a) (West 2008).

Section 5-113 of the Code defines the term "act of duty" as "Any act of police duty inherently

involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed

6

No.1-09-3151

on policeman ***."  40 ILCS 5/5-113 (West 2008).[1]

In *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund,* 114 Ill. 2d 518 (1986), our supreme court addressed the issue of whether an injury to a police officer occurred while performing an act of duty and, thus, triggered a line-of-duty disability pension.  In *Johnson,* a police officer was at his assigned post when a citizen from across an intersection called to him asking for assistance in a traffic accident.  *Id.* at 520.  While crossing the intersection, the police officer slipped and injured himself.  *Id.*  The supreme court held that the police officer's actions were an "act of duty" as defined in the Pension Code such that he was entitled to line-of- duty pension benefits.  *Id.* at 523.  The supreme court reasoned:

> "There can be little question, police officers assigned to
> duties that involve protection of the public discharge their
> responsibilities by performing acts which are similar to those
> involved in many civilian occupations.  *The crux is the capacity in*
> *which the police officer is acting*."  (Emphasis added.)  *Id.* at 522.

The supreme court explained that the police officer's "act of duty was the act of responding to the call of a citizen for assistance.  In performing that act, he was injured." *Id.*

Whether a police officer has suffered a line-of-duty injury is fact specific.  In those cases

---

[1]  Article III of the Pension Code addresses police pension funds for cities that have a population under 500,000, such as the city of Northlake in this case.  However, article III does not define the term "act of duty."  We acknowledge that the definition of "act of duty" found in section 5-113 is found in article V of the Pension Code, which pertains to cities with a population of over 500,000.  However, our supreme sourt has stated that "[w]e may look to article V of the Pension Code for a definition of language used in article III of the Code."  *Robbins v. Board of Trustees of the Carbondale Police Pension Fund,* 177 Ill. 2d 533, 540 (1997).

7

where a police officer is found to have suffered a line-of-duty injury the facts demonstrate that the officer faced a special risk associated with serving as a police officer at the time the injury occurred. In *Wagner v. Board of Trustees of the Police Pension Fund,* 208 Ill. App. 3d 25, 26-30 (1991), this court held that where a police officer serving notice fell through a faulty porch, the act of walking across a porch was hardly unique to police officers, but serving notice to appear is a special risk of an officer.

In *Barber v. Board of Trustees of the Village of South Barrington Police Pension Fund,* 256 Ill. App. 3d 814, 815-18 (1993), a line-of-duty injury was found where during the special risk activity of a traffic stop, a police officer was injured by a vehicle hitting the open door of the police officer's squad car.

In *Alm v. Lincolnshire Police Pension Board,* 352 Ill. App. 3d 595, 596-603 (2004), a police officer riding a bicycle patrol unit noticed pain in his knee while on patrol. Although he did not recall a specific accident, it was held, "plaintiff faced risks not ordinarily encountered by civilians. He was required to ride his bicycle at night over varying terrain, looking after his own personal safety while also remaining vigilant in the performance of his patrol duties. Plaintiff was also carrying a significant amount of weight." *Alm*, 352 Ill. App. 3d at 601.

In *Merlo,* 383 Ill. App. 3d at 98-103, where an officer responded to a call and was injured when he removed stacked parking blocks in a parking lot, the court held, "petitioner's acts were that of a police officer responding to a civilian call; trying to immediately eliminate a public safety hazard."

In *Sarkis v. City of Des Plaines,* 378 Ill. App. 3d 833, 834-42 (2008) (quoting 40 ILCS

5/5-113 (West 2002)), where an officer dispatched to a railroad crossing was injured while attempting to lift a malfunctioning railroad gate it was held, "[the officer's] act involv[ed] a risk that is 'not ordinarily assumed by a citizen in the ordinary walks of life.' "

In *Jones,* 384 Ill. App. 3d at 1065-74, where an officer investigating complaints of speeding motorists was injured when another car struck his vehicle, this court found the officer was "on patrol intending to investigate an area that had reports of speeders. Although [the officer] was not responding to a call, he was conducting his patrol and an investigation, and he did face special risks associated with being on patrol duty."

In contrast, where a police officer did not face the sort of special risks associated with serving as a police officer at the time an injury occurred, this court has found that the injury was not suffered in the line of duty under the Pension Code. In *Morgan v. Retirement Board of the Policemen's Annuity & Benefit Fund,* 172 Ill. App. 3d 273, 274 (1988), this court found the police officer was not injured while performing an act of duty. The police officer was filling out paperwork at the police station when he went to sit down in a chair, but missed and injured his head, neck, and back. *Id.* This court found that the police officer was not entitled to a line-of-duty disability benefit because he did not sustain his injuries in the performance of an act of duty under the Pension Code. *Id.* at 275. This court reasoned that "we cannot say that completing police reports, albeit a function peculiar to police officers, inherently involves a special risk not ordinarily assumed by a citizen in the ordinary walks of life." *Id.* at 276.

In *Fedorski v. Board of Trustees of the Aurora Police Pension Fund,* 375 Ill. App. 3d 371, 372 (2007), this court found the police officer was not injured while performing an act of

duty under the Pension Code because his injury occurred when no special risk related to his job had been taken. The police officer, assigned to work as a evidence technician, drove in an unmarked police car to photograph suspects at a jail. Before returning to the police station, the officer drove to meet another officer to return a camera the officer had been using to photograph the suspects. While the officer's vehicle was stopped at a red light, it was struck from behind by another motorist. *Id.* In finding the police officer was not injured when performing an act of duty, the court reasoned that the officer "was not acting in a capacity that entailed any special risk at that particular time." *Id.* at 375. The risks faced by the officer were "essentially no different from those faced by any other automobile passenger. Nothing related to his duties as an evidence technician increased that risk." *Id.* at 376. It was noted that "[h]ad [the officer] been acting in a capacity involving a special risk when he was injured, he would have been entitled to line-of-duty disability pension even though the immediate cause of the injury was an act- riding in an automobile- involving only ordinary risk." *Id.* at 375.

Here the Pension Board's decision was not clearly erroneous because the incident in question, entering a vehicle, did not involve a "special risk, not ordinarily assumed by a citizen in the ordinary walks of life." 40 ILCS 5/5-113 (West 2008). According to Filskov's testimony, he was not responding to a call. He had yet to resume patrol but, rather, was attempting to enter the rear seat of a vehicle that was still in the police station's parking lot. He was standing outside the car and moving items off the seat when the incident occurred. This was not a "special risk" arising from his being a police officer. He was engaging in an ordinary risk that all citizens assume when they either enter a vehicle or move items off the seats of vehicles. The capacity in

which he was acting was that of a passenger entering a motor vehicle, which is the same activity all passenger civilians do everyday. See *Johnson,* 114 Ill. 2d at 522 ("[t]he crux is the capacity in which the police officer is acting"). Because Filskov was acting in a capacity in which civilians commonly act, and the activity did not involve a special risk, we find that the fact scenario in this case more closely resembles this court's decisions in *Morgan* and *Fedorski* than those decisions that found that the police officer was performing an act of duty under the Pension Code when injured. Filskov testified he was not responding to a specific call to duty like in *Johnson* (crossing intersection in response to traffic accident), *Merlo* (removed hazardous parking blocks in response to a call), *Sarkis* (lifting railroad crossing gate in response to a call), or *Jones* (in route to investigate speeding motorists when struck by another motorist). He was not involved in inherent "police activities" at the time of the incident like in *Wagner* (serving notice), *Barber* (effectuating traffic stop), or *Alm* (officer on bicycle patrol through rough terrain, at night, carrying significant amount of weight). After reviewing the record, we cannot say that we are " 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395 (quoting *United States Gypsum Co.,* 333 U.S. at 395). Therefore, the decision of the Pension Board must be upheld as it is not clearly erroneous.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

No.1-09-3151

PRESIDING JUSTICE CUNNINGHAM, dissenting.

I respectfully dissent from the result reached by the majority. I would affirm the circuit court's reversal of the Board's ruling and hold that the injured police officer is entitled to line of duty disability benefits. The record is clear that the plaintiff, Officer Filskov (Filskov) was a member of a special team of police officers who were assigned to specific activity. This team was known as the Neighborhood Enforcement Team or NET. As an NET officer, Filskov and his partners were *required* to drive to specific locations in the city of Northlake in accordance with the gang suppression activities of NET. As Filskov was entering the vehicle in the course of his assignment to drive to a location required of his NET team, the injury occurred. In my view, that puts it squarely within the category of injuries for which line of duty disability benefits are payable.

The Board rejected Filskov's application for line of duty disability on the ground that he was not engaged in "an act of duty" at the time of the injury. They go on to say that Filskov's injury occurred because he "cho[se] to become a passenger in a vehicle." The Board acknowledges that its analysis is incomplete in that the key consideration is the *capacity* in which Filskov was acting at the time of the injury.

The Board's comments about Filskov's injury suggests that it viewed it in a manner as if he sustained the injury while engaging in some casual activity unrelated to his work as a police officer, and more specifically as a team member of NET. It cannot be rationally argued that Filskov was getting into that particular police vehicle; in that particular location; at that particular time; for personal reasons unrelated to his specific work as a team member of NET. On the

12

contrary, his team had completed a report on a prior activity and were headed out to resume their specialized work. Filskov was not taking a casual car ride with friends. He was engaged in serious, specialized police work when he was injured.

The Board's comparison of the manner in which Filskov's injury was sustained, to that of an "[ordinary] citizen who chooses to become a passenger in a vehicle," begs the question of why Filskov was entering *that vehicle at that time*. The answer is that he was performing an act of police duty, attendant to his role as a team member of NET and the activity was peculiar to that unit and his work. I believe section 3-114.1(a) of the Pension Code given its plain meaning supports Filskov's argument that he is entitled to line of duty disability benefits. The relevant portion of the Code states:

> "If a police officer as the result of *** injury incurred in or
>
> resulting from the performance of an act of duty, is found to be
>
> physically *** disabled ***, the police officer shall be entitled to a
>
> disability *** pension ***." 40 ILCS 5/3-114.1(a)(West 2008).

The majority notes that whether a police officer has suffered a line of duty injury is fact specific. They then discuss the facts of several cases as support for their holding in this case. I disagree that *any* of the cases cited by the majority in their analysis, supports the Board's ruling and the majority's holding in this case. I believe the legislature intended that police officers injured while clearly *performing an act of police duty*, are entitled to line of duty disability benefits. In my view, the plaintiff met his burden of proving that his injury occurred within the narrow parameters of performing an act of police duty.

13

The Board and the majority seem to focus on the argument that the plaintiff was not facing a specific danger, peculiar to NET officers at the precise moment of injury. Filskov, relying on *Alm v. Lincolnshire Police Pension Board*, 352 Ill. App. 3d 595 (2004), correctly argues that it is the entirety of the circumstances leading to the injury which must be considered. It is uncontroverted that Filskov "was in the middle of a specialized patrol" which required him to go to a location by means of a police motor vehicle. Thus, it is inaccurate for the Board to compare Filskov's activity at the time of the injury to an ordinary "citizen who chooses to become a passenger in a vehicle." Using the Board's logic, any police officer who suffers an injury while on duty, performing a specific act of police work, would never qualify for line of duty disability benefits if the injury is of a category that could conceivably be suffered by an ordinary citizen. This reasoning makes little sense when viewed in light of the legislative intent, which is to provide line of duty benefits to police officers who are injured while performing an act of police duty. I do not believe and nothing in the record suggests that Filskov had a choice regarding the mode of transportation which he and his team members were required to use as they traveled to their NET assignment. In determining whether an officer is entitled to line of duty disability benefits, " 'the crux of the question is the capacity in which the police officer is acting' " at the time of the injury "rather than the precise mechanism of the injury." *Id*. at 599, quoting *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 114 Ill. 2d 518, 522 (1986). There can be no doubt that Filskov was acting in his capacity as a team member of NET, engaged in the specific activities of that unit when he was injured.

While deference is due to the findings of the Board, we are not required to ignore the

14

obvious and engage in convoluted reasoning to uphold the Board's ruling. As our supreme court has said, "we are not required to suspend common sense," where, as here, the facts in evidence clearly support Filskov's claim that his injury occurred in the line of duty. *People v. Jimerson*, 166 Ill. 2d 211, 227 (1995). I believe that the plain meaning of the statute, legislative intent and a solid base of case law provide the bases upon which to affirm the ruling of the circuit court of Cook County, finding the plaintiff, Filskov, eligible for line of duty disability benefits. It is for these reasons, that I respectfully dissent from the holding of the majority.