2021 IL App (3d) 190557

Opinion filed January 5, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| PAUL GRIFFIN, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 3-19-0557 |
| THE VILLAGE OF NEW LENOX POLICE | ) | Circuit No. 18-MR-3225 |
| PENSION FUND, THE BOARD OF | ) | |
| TRUSTEES OF THE VILLAGE OF NEW | ) | |
| LENOX POLICE PENSION FUND and | ) | |
| THE VILLAGE OF NEW LENOX, | ) | Honorable |
| | ) | John C. Anderson, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices O'Brien and Wright concurred in the judgment and opinion.
_____

**OPINION**

¶ 1        The plaintiff, Paul Griffin, applied to the Board of Trustees of the Village of New Lenox

Police Pension Fund (Board) for a line-of-duty disability pension pursuant to section 3-114.1 of

the Illinois Pension Code (Code) (40 ILCS 5/3-114.1 (West 2016)). Alternatively, the plaintiff

requested a not-on-duty disability pension pursuant to section 3-114.2 of the Code (*id.* § 3-114.2).

The Board denied his request for a line-of-duty disability pension but granted him a not-on-duty

disability pension. The plaintiff sought administrative review of the Board's decision before the

circuit court, naming the Village of New Lenox Police Pension Fund, the Board, and the Village of New Lenox as defendants. The court reversed the Board's decision.

¶ 2                                    I. BACKGROUND

¶ 3        The following factual recitation is taken from the evidence presented before the Board on June 20, 2018, and the Board's decision and order dated October 22, 2018.

¶ 4                                A. The Plaintiff's Testimony

¶ 5        In December 2002, the plaintiff was appointed as a probationary patrol officer for the New Lenox Police Department and received a regular appointment in December 2003. Prior to this employment, he worked for several other municipalities as a police officer. Around November 2011, the plaintiff was promoted to detective. This role required him to handle criminal investigations, make and assist with arrests, respond to emergency traffic accidents, assist officers when dispatched, use necessary force to disarm suspects, testify in a courtroom setting, and assist in the preparation of cases for prosecution.

¶ 6        On September 7, 2016, the plaintiff was working from 8 a.m. until 4 p.m. He was wearing his service revolver, handcuffs, and police radio. The plaintiff reported to the police department at 8 a.m. His supervisor informed him that he was to testify before a grand jury pursuant to a subpoena at the county courthouse. The plaintiff drove his vehicle assigned by the police department with his partner, Jeff Furlong, to testify. He parked the vehicle and carried paperwork, police reports, and a subpoena related to his testimony into the courtroom while Furlong waited for him. After testifying, the plaintiff and Furlong exited the building and walked toward the vehicle to return to the police department. While getting into the vehicle, the plaintiff slipped off the curb, hyperextended his knee, and grabbed the door to prevent himself from falling. The plaintiff immediately felt pain in the front and rear of his left knee but returned to the police department.

2

¶ 7    Following the injury, the plaintiff's knee continued to hurt, and he reported the incident to his supervisor. The next day, he made an appointment with his medical provider because his pain was worse and he could hardly walk. The plaintiff was advised to take ibuprofen and ice his knee. He returned to work on light duty. The plaintiff continued to seek medical treatment where he received a cortisone injection, arthroscopic surgery for a meniscus tear, and an eventual knee replacement in August 2017. He was unaware of any permanent light duty assignment with the police department. The plaintiff resigned from his position with the police department on October 10, 2017. He admitted that he resigned during an internal investigation unrelated to his testimony and injury that occurred on September 7, 2016.

¶ 8    The plaintiff testified that, as a detective, he was required to perform all duties of a patrol officer, even when driving to and from assigned court appearances. However, at the time of his injury, he was not looking for crimes, no one contacted him on his department phone or radio to respond to any emergency call or service, and he completed all of his duties related to the grand jury at the time he slipped. The plaintiff agreed that, at the time of his injury, he was simply walking back to the car to return to the police station and do some more paperwork. He admitted that any citizen could testify at a courthouse and bring paperwork, and it was not unique to police officers.

¶ 9                                    B. Medical Evidence

¶ 10   The plaintiff was examined by three physicians in accordance with section 3-115 of the Code (*id.* § 3-115). First, Dr. Junaid Makda, a board-certified orthopedic surgeon, examined the plaintiff on March 8, 2018. He stated that the plaintiff reported he was returning to his car from the courthouse while carrying documents in his hand, his vehicle was parked by a curb, and his foot slipped/tripped over the curb when he entered his vehicle, which caused him to hyperextend his knee and grab the car door to prevent himself from falling. He opined that the plaintiff was

3

permanently disabled. Dr. Makda also stated that the disability was a direct result of a permanent aggravation of a preexisting condition (osteoarthritis of the left knee).

¶ 11        Second, Dr. Leon M. Huddleston, a board-certified physical medicine and rehabilitation physician, examined the plaintiff on March 12, 2018. He stated that the plaintiff reported he was leaving the courthouse when he misstepped on a curb and hyperextended his left knee. Dr. Huddleston opined that the plaintiff was permanently disabled. He found that the plaintiff's explanation of how the disability occurred was consistent with his findings. Dr. Huddleston further opined that the plaintiff had preexisting degenerative changes (osteoarthritis) in the left knee that were aggravated by the September 7, 2016, accident. He noted that the plaintiff will have difficulty stooping and bending because of limited range of motion and pain in the knee.

¶ 12        Last, Dr. Daniel G. Samo, an occupational and environmental medicine physician, examined the plaintiff on March 15, 2018. He opined that the plaintiff was disabled. He noted that, prior to the September 7, 2016, injury, the plaintiff had been fully functioning and asymptomatic in regard to his underlying preexisting degenerative knee condition. However, the September 7, 2016, injury caused the plaintiff to become symptomatic.

¶ 13                                C. The Board's Findings

¶ 14        The Board found that the plaintiff was disabled as a result of the September 7, 2016, injury. However, it denied his request for a line-of-duty disability pension and awarded him benefits for a not-on-duty disability pension instead. The Board found that the plaintiff failed to meet his burden that he was injured by any act of duty involving special risk not encountered by an ordinary citizen. Specifically, it noted (1) numerous citizens walk to and from buildings with paper in their hands every day, (2) the plaintiff was not on patrol or responding to a call when he misstepped, (3) he had motive to be dishonest in his testimony because he would be unable to return to work if

4

the Board denied him benefits, (4) he only applied for disability benefits after learning he was under investigation and would likely be discharged, and (5) he was less than credible.

¶ 15                                      D. The Circuit Court's Decision

¶ 16        The plaintiff sought review of the Board's determination before the circuit court of Will County. The court reversed the Board's determination. The Board appeals.

¶ 17                                              II. ANALYSIS

¶ 18        On appeal, the parties dispute whether the plaintiff was performing an act of duty within the meaning of the Code when he was injured on September 7, 2016.

¶ 19                                          A. Standard of Review

¶ 20        In administrative review cases, this court reviews the decision of the administrative agency, not the decision of the circuit court. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). The applicable standard of review depends upon whether the issue presented is one of fact where the manifest weight standard applies, one of law where the *de novo* standard applies, or a mixed question of fact and law where the clearly erroneous standard applies. *Merlo v. Orland Hills Police Pension Board*, 383 Ill. App. 3d 97, 99-100 (2008).

¶ 21        Here, the parties dispute the applicable standard of review. However, they agree that the issue is whether the plaintiff was performing an act of duty within the meaning of the Code. The Board argues that we review its decision under the clearly erroneous standard because the issue involves a mixed question of fact and law. The plaintiff argues for *de novo* review because the facts are uncontroverted. We agree with the Board that the clearly erroneous standard applies, as this court is being asked to review an administrative decision that "involves an examination of the legal effect of a given set of facts," thereby constituting a mixed question of fact and law. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). Stated another way,

"act of duty" is a legal term that required the Board's interpretation, and whether the "act of duty" involved a special risk required the Board to make a factual determination. *Gilliam v. Board of Trustees of the City of Pontiac Police Pension Fund*, 2018 IL App (4th) 170232, ¶ 23. Thus, we proceed with the clearly erroneous standard. Under this standard, the Board's decision is given some deference and reversal is warranted only when the court is left with the definite and firm conviction that a mistake has been committed. *Merlo*, 383 Ill. App. 3d at 100.

¶ 22                                B. Act of Duty

¶ 23        Section 3-114.1(a) of the Code provides for a line-of-duty disability pension:

> "If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an *act of duty*, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a disability retirement pension ***.
>
> A police officer shall be considered 'on duty' while on any assignment approved by the chief of the police department of the municipality he or she serves, whether the assignment is within or outside the municipality." (Emphasis added.) 40 ILCS 5/3-114.1(a) (West 2016).

¶ 24        A police officer is not always performing an act of duty within the meaning of the Code just because he is "on duty." *Rose v. Board of Trustees of the Mount Prospect Police Pension Fund*, 2011 IL App (1st) 102157, ¶ 71. Instead, there has to be "[s]omething more" than just being "on duty" to receive a line-of-duty pension. *Jones v. Board of Trustees of the Police Pension Fund of the City of Bloomington*, 384 Ill. App. 3d 1064, 1069 (2008). The Code defines "act of duty" as:

> "Any act of police duty inherently involving special risk, not ordinarily assumed by a

6

citizen in the ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment; or any act of heroism performed in the city having for its direct purpose the saving of the life or property of a person other than the policeman." 40 ILCS 5/5-113 (West 2016).

¶ 25    In *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 114 Ill. 2d 518, 521-23 (1986), our supreme court addressed this special risk language contained in the Code. In that case, a police officer on traffic-control duty slipped and fell while crossing an intersection in response to a citizen's request to investigate an accident. *Id.* at 520. The argument presented to deny the officer a line-of-duty disability pension was that the act of walking across a street is an act assumed by any citizen, which did not contain any special risk as required by the Code. *Id.* at 521. More narrowly, it was argued that a line-of-duty disability pension was reserved for officers injured performing inherently dangerous duties that only police officers were called upon to perform. *Id.* The court rejected this interpretation of the Code, stating:

"We do not find anything in the statute or in its legislative history to support the defendant's strained construction that the term 'special risk' only encompasses 'inherently dangerous' activities. Police officers assigned to duties that involve protection of the public discharge those duties by performing acts which are similar to those involved in many civilian occupations. Driving an automobile, entering a building, walking up stairs, and even crossing the street are activities common to many occupations, be it policeman or plumber.

There can be little question, police officers assigned to duties that involve protection of the public discharge their responsibilities by performing acts which are

7

similar to those involved in many civilian occupations. The crux is the capacity in which the police officer is acting.

When a policeman is called upon to respond to a citizen, he must have his attention and energies directed towards being prepared to deal with any eventuality.

Additionally, unlike an ordinary citizen, the policeman has *no* option as to whether to respond; it is his duty to respond regardless of the hazard ultimately encountered. In the case at bar, at the time of his disabling injury, the plaintiff was discharging his sworn duties to the citizens of Chicago by responding to the call of a citizen to investigate an accident. There is no comparable civilian occupation to that of a traffic patrolman responding to the call of a citizen.

The defendant's ultimate reliance on the fact that the plaintiff was 'traversing a street' when he was injured is misplaced. The provisions of section 5-154 of the Illinois Pension Code (Ill. Rev. Stat. 1983, ch. 108½, par. 5-154) conferring the right to duty-disability benefits do not require that an officer be injured *by* an act of duty. Rather, the duty disability is awarded when an officer is 'disabled *** as the result of injury incurred *** *in the performance of an act of duty*.' (Emphasis added.) [*Id.*] In the plaintiff's case, the act of duty was the act of responding to the call of a citizen for assistance. In performing that act, he was injured.

The defendant's interpretation envisions a police officer involved in a gun battle, a high-speed car chase, or some other obviously dangerous situation in order to qualify for duty-disability benefits. This is an overly restrictive and unrealistic interpretation. If this court were to adopt the defendant's narrow reading of section 5-113, it could discourage police officers from the dedicated and enthusiastic performance of their duties, to the

8

detriment of all the citizens of Chicago." (Emphases in original). *Id.* at 521-23.

¶ 26    Since *Johnson*, there have been several cases where officers were injured in the performance of acts of duty. See *Wagner v. Board of Trustees of the Police Pension Fund of Belleville*, 208 Ill. App. 3d 25 (1991) (injured while serving a notice to appear and fell through a porch); *Alm v. Lincolnshire Police Pension Board*, 352 Ill. App. 3d 595 (2004) (injured knee over time while riding police bicycle on patrol); *Sarkis v. City of Des Plaines*, 378 Ill. App. 3d 833 (2008) (injured while raising a malfunctioning railroad crossing gate that he was dispatched to address); *Merlo*, 383 Ill. App. 3d 97 (injured while unstacking concrete blocks that were reported by a civilian to have been stacked by mischievous juveniles in a parking lot); *Jones*, 384 Ill. App. 3d 1064 (injured in a vehicle accident while driving a police vehicle on patrol intending to investigate an area that had reports of speeders); *Mingus v. Board of Trustees of the Police Pension Fund*, 2011 IL App (3d) 110098 (injured while helping a citizen with a stuck vehicle); *Rose*, 2011 IL App (1st) 102157 (injured while performing regular patrol duties when his marked squad car was hit by another vehicle); *Martin v. Board of Trustees of the Police Pension Fund*, 2017 IL App (5th) 160344 (injured in a vehicle accident in an unmarked squad car while returning to the police department from the county courthouse where he obtained subpoenas for an ongoing investigation and filed tickets); *Gilliam*, 2018 IL App (4th) 170232 (injured while performing or learning to perform the duties of a bicycle-patrol officer); *Ashmore v. Board of Trustees of the Bloomington Police Pension Fund*, 2018 IL App (4th) 180196 (injured from falling while pushing a civilian's vehicle stuck in the snow). These cases have been broadly categorized as acts of duty involving protecting the public, responding to a disturbance, engaging in patrol duties, and addressing public safety hazards. *Summers v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 2013 IL App (1st) 121345, ¶ 44. However, an act of duty is not restricted to one of these four categories.

9

See *id.*

¶ 27 There have also been a number of cases where courts have found that the officer was not injured in the performance of an act of duty. See *Morgan v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 172 Ill. App. 3d 273 (1988) (injured when attempting to sit down in a chair at his desk to fill out a police report and the chair rolled out from underneath him); *White v. City of Aurora*, 323 Ill. App. 3d 733 (2001) (injured while exiting his police vehicle to place a parking citation on an illegally parked car where the police department also employed civilians to issue tickets); *Fedorski v. Board of Trustees of the Aurora Police Pension Fund*, 375 Ill. App. 3d 371 (2007) (evidence technician on 24-hour call was injured in an unmarked police vehicle that was struck while stopped at a red light); *Filskov v. Board of Trustees of the Northlake Police Pension Fund*, 409 Ill. App. 3d 66 (2011) (injured while entering a police vehicle in the police station's parking lot and had yet to resume patrol); *Buckner v. University Park Police Pension Fund*, 2013 IL App (3d) 120231 (injured while driving home after her shift had ended in an unmarked squad car); *Summers*, 2013 IL App (1st) 121345 (injured while lifting and handling police supplies); *Swoboda v. Board of Trustees of the Village of Sugar Grove Police Pension Fund*, 2015 IL App (2d) 150265 (injured while participating in the police department's fitness testing). These cases involved acts found to involve risk ordinarily assumed by a citizen in the ordinary walks of life.

¶ 28 C. The Plaintiff's Case

¶ 29 The Board argues that the plaintiff was not disabled by an act of duty because slipping off a curb while getting into a car to return to the police station does not involve special risks. The plaintiff argues that he was engaged in an act of duty when he was injured because he was complying with a direct order to complete a required duty as detective and, therefore, he faced

10

special risks. The parties rely on a number of cases to support their positions. *Supra* ¶¶ 26-27. However, we find the cases of *Filskov* and *Martin* most factually similar.

¶ 30    In *Filskov*, the plaintiff was a patrol officer assigned to an unmarked police vehicle with two other officers. *Filskov*, 409 Ill. App. 3d at 67. The plaintiff left the police station with the two other officers and walked toward the squad car in the police station's parking lot to resume patrol. *Id.* at 68. As he was standing outside the open door of the squad car, the officer driving the car inadvertently put it in drive and drove over his foot. *Id.* The First District held that the plaintiff was not performing an act of duty when he was injured, finding that he was merely entering a vehicle, which did not involve a special risk required by the Code. *Id.* at 72. The court emphasized that the plaintiff (1) was not responding to a call; (2) had yet to resume patrol; and (3) was acting in a capacity in which civilians commonly act, specifically as an automobile passenger, which did not involve a special risk. *Id.* at 72-73. A dissenting justice opined that the plaintiff was performing an act of duty because "his team had completed a report on a prior activity and were headed out to resume their specialized work" "when he was injured." *Id.* at 74 (Cunningham, P.J., dissenting). The dissenting justice went on to note that the plaintiff was entering that specific vehicle because he was performing an act of duty peculiar to his unit and work. *Id.*

¶ 31    In *Martin*, a detective was on duty when he was riding as a passenger in the front seat of an unmarked squad car and it was rear-ended by another vehicle at a stoplight. *Martin*, 2017 IL App (5th) 160344, ¶ 4. At the time of the accident, the detective was returning to the police department from the courthouse, where he was obtaining subpoenas for an ongoing investigation and filing traffic tickets. *Id.* The Fifth District held that the detective was injured during the performance of an act of duty. *Id.* ¶ 28. The court found that the duties performed by the detective (obtaining subpoenas and filing tickets) were not delegated to any members of the general public,

11

and because he was a passenger in a squad car at the time of the accident, he was subject to attend to any other police responsibility if necessary. *Id.* The court acknowledged that the detective had already completed his work at the courthouse and was on his way back to the police station at the time of the accident, but found that "he had to 'have his attention and energies directed towards being prepared to deal with any eventuality.' " *Id.* ¶ 29 (quoting *Johnson*, 114 Ill. 2d at 522). The court distinguished the case from other decisions, specifically noting that the detective was not (1) performing a clerical duty at a desk (*Morgan*); (2) performing a task delegated to the general public (*White*); or (3) merely riding in an automobile subject to ordinary risk (*Fedorski*), as he was required to have his attention and energy directed toward eventuality. *Id.* ¶¶ 33, 35, 38.

¶ 32     As our supreme court made clear, the crux of the issue in these cases is the *capacity* in which the officer was serving at the time of the injury and whether that capacity involved special risks. See *Johnson*, 114 Ill. 2d at 522. Based on the facts and arguments presented, there are two different capacities the plaintiff could have been serving: a testifying witness in a criminal investigation or a pedestrian that is essentially "on call." As to the testifying capacity, it presents the question of when that capacity ceases. However, we need not answer that question because we find that, for the reasons that follow, the plaintiff was not exposed to special risks not ordinarily assumed by a citizen in the ordinary walks of life in either capacity. See *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10 (courts of review do not consider issues where the result will not be affected regardless of how those issues are decided).

¶ 33     This case is similar to *Filskov* in that the plaintiff was acting in a capacity in which civilians commonly act. Ordinary citizens are called upon every day to testify in court and face the same risk of slipping on a curb when returning to their vehicle with papers in hand. As the plaintiff admitted, he was merely walking from the courthouse to his vehicle with papers in hand following

12

his subpoenaed testimony. He was not looking for crimes, no one contacted him on his department phone or radio to respond to any emergency call or service, and he completed all of his duties related to the grand jury at the time he slipped. Nonetheless, while relying on the *Filskov* dissent's analysis, the plaintiff argues that he was in the performance of an act of duty when he was injured because his injury occurred at a location pursuant to a direct order from his supervisor. The law, both statutory and decisional, is devoid of any positional risk qualifier to satisfy the act-of-duty requirement. Although his presence in the courthouse parking lot was the result of a department requirement, there is no evidence that he was exposed to special risks.

¶ 34        The plaintiff also suggests that the act of carrying the police report and subpoena is unique to him as an officer because the documents were not available to the general public. The Board argues that the documents were obtainable by the general public pursuant to the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 2016)). We fail to see how the content of the document changes the plaintiff's risk. Even assuming that the documents were confidential or unique to policework, this does not defeat the fact that the plaintiff was carrying the documents while merely walking to his vehicle, in contrast to the officer in *Wagner*, who was *serving* a notice to appear when he fell through a rotted porch plank. *Wagner*, 208 Ill. App. 3d at 29. Thus, the content of the documents alone does not render his act of walking to his vehicle an act of duty.

¶ 35        Nevertheless, the plaintiff urges this court to apply the reasoning in *Martin* and find that he was performing an act of duty. However, we decline such request because we find that *Martin* is not well reasoned. The *Martin* court concluded that, as a mere passenger in a squad car returning to the police station, the detective was required "to 'have his attention and energies directed towards being prepared to deal with any eventuality.' " *Martin*, 2017 IL App (5th) 160344, ¶ 29

13

(quoting *Johnson*, 114 Ill. 2d at 522). This reasoning is at odds with *Johnson*, the very case it relied on for this proposition. For the sake of completeness, the supreme court in *Johnson* stated:

> "*When a policeman is called upon to respond to a citizen*, he must have his attention and energies directed towards being prepared to deal with any eventuality." (Emphasis added.) *Johnson*, 114 Ill. 2d at 522.

This statement corresponds with the facts in *Johnson*, where the officer was injured while walking in response to a citizen's request. The court in *Martin* omitted a very critical part of the supreme court's statement referring to when an officer is *responding* to a citizen and broadly applied it.

¶ 36 Arguably, under the analysis in *Martin*, officers in any capacity have a duty to protect and serve, which would require their "attention and energies directed towards being prepared to deal with any eventuality" (*Martin,* 2017 IL App (5th) 160344, ¶ 22) and would result in a qualification for a line-of-duty disability pension for merely being "on duty." This interpretation not only renders the legislature's use and definition of "act of duty" superfluous but also conflates the concept of "act of duty" with "on duty." As an example, the plaintiff in this case argues that he was wearing his service revolver, handcuffs, and police radio and was responsible for responding to any emergency dispatch calls, which would be unique to officers and not citizens. This court addressed a similar argument in *Buckner* and stated that an officer must still be injured while performing a police duty involving special risks even if that officer is injured while on 24-hour call. *Buckner*, 2013 IL App (3d) 120231, ¶ 17. The same reasoning applies here. The officer must be doing "[s]omething more" than merely being "on duty." *Jones*, 384 Ill. App. 3d at 1069. The act of wearing a service revolver, handcuffs, and a police radio does not involve special risks not ordinarily assumed by a citizen in the ordinary walks of life. For the foregoing reasons, we decline to follow *Martin*.

14

¶ 37 We conclude that the plaintiff in this case was not performing an act of duty when he was injured. See 40 ILCS 5/5-113, 3-114.1(a) (West 2016). He was walking toward his police vehicle while carrying paperwork in the courthouse parking lot. The plaintiff admitted that he was not looking for crimes, no one contacted him on his department phone or radio to respond to any emergency call or service, and he completed all of his duties related to the grand jury at the time he slipped. Thus, there was no evidence that he was acting in a way any different than a citizen in the ordinary walks of life, such as protecting the public, responding to a disturbance, patrolling, or addressing a public safety hazard. See *Summers*, 2013 IL App (1st) 121345.

¶ 38 For the foregoing reasons, we cannot say that the Board's decision to deny the plaintiff a line-of-duty disability pension was clearly erroneous, as we are not left with the definite and firm conviction that a mistake has been committed. See *Merlo*, 383 Ill. App. 3d at 100. Therefore, we reverse the circuit court's judgment, which reversed the Board's decision.

¶ 39                                    III. CONCLUSION

¶ 40 For the foregoing reasons, the judgment of the circuit court is reversed.

¶ 41 Reversed.

---

**No. 3-19-0557**

---

| | |
|---|---|
| **Cite as:** | *Griffin v. Village of New Lenox Police Pension Fund*, 2021 IL App (3d) 190557 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 18-MR-3225; the Hon. John C. Anderson, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Keith A. Karlson and Raymond G. Garza, of Karlson Garza LLC, of Palos Heights, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Thomas W. Duda, of Palatine, for appellee. |

---