DALE L. WAGNER, Plaintiff-Appellee, v. BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF BELLEVLLE, Defendant-Appellant.

Fifth District   No. 5—90—0239

Opinion filed January 30, 1991.

Philip R. Rice, of Rice Law Offices, of Belleville, for appellant.

Michael J. Reagan and Kevin T. Hoerner, both of Belleville, for appellee.

PRESIDING JUSTICE RARICK delivered the opinion of the court:

Plaintiff, Dale Wagner, filed a petition for a duty-related disability pension with defendant Board of Trustees of the Police Pension Fund of Belleville (the Board). After a hearing, the Board determined that Wagner's condition was not duty related but that he was entitled to a non-duty-related disability pension. Wagner filed a complaint for administrative review, and the trial court reversed the decision of the Board, finding that the Board's determination that Wagner's disability was not duty related was against the manifest weight of the evidence. The Board appeals. We affirm.

Wagner became a Belleville police officer in 1966. In 1980, he twisted his right knee while getting out of a car. He was treated by Dr. Stan London, who performed surgery to remove torn cartilage. In December of 1985, he injured his left knee while escorting a resisting prisoner up a flight of steps. He went to St. Elizabeth Hospital and had X rays taken. Wagner again injured his left knee on March 20, 1986. While serving a notice to appear, a rotted porch plank gave way and his left leg fell through to the groin. He was examined by the emergency room physician, but sought no further treatment. Wagner injured his left knee a third time on May 27, 1986. While responding to a disturbance, he stepped into a culvert

offset and twisted his leg. Wagner saw Dr. London on May 31, 1986, and X rays were taken again. London suspected a torn cartilage, and this was confirmed by a subsequent dye injection. Wagner did not mention the other two injuries to his left knee to Dr. London. He saw London again on June 7 and on July 31 had outpatient surgery to remove torn cartilage. Dr. London testified that the X rays showed some osteoarthritis, which was not uncommon for a 48-year-old man. Wagner saw London several more times throughout 1986 and 1987.

Wagner saw Dr. Bassman, an associate of Dr. London's, on May 18, 1987. Bassman reviewed Wagner's file and the previous X rays taken by Dr. London and testified that X rays of the left knee showed a mild degree of degenerative arthritis which predated the May 27, 1986, injury. He also stated that based upon Wagner's statement that he needed to be "100 percent," Wagner could not return to full active duty as a policeman. Bassman further stated that the May 27, 1986, accident was sufficient to cause the torn cartilage in Wagner's left knee, and that the degenerative changes could be related to his previous injuries. Wagner also saw Dr. Robert Tatkow. In his report, Tatkow indicated that Wagner was unfit for performing street duty as a police officer. Wagner saw two other doctors, Dr. Rogers and Dr. Kuhlman, at the request of the Board. Both found a mild degree of degenerative arthritis, but Rogers concluded that Wagner could return to work without any limitation on his day-to-day activities, and Kuhlman concluded Wagner's condition did not preclude his working as a police officer.

Wagner sought a disability pension, and the Pension Board granted a non-duty-related pension. Wagner appealed, and the trial court reversed the Board to the extent the Board found the injury to be non-duty related.

We note initially that the question of whether Wagner was disabled is not at issue here. The Board found Wagner to be disabled but that such disability was not duty related. The trial court reversed the Board only as to its finding that Wagner's disability was not duty related. We therefore consider only whether the trial court erred in finding the Board's decision that the injury was non-duty related to be against the manifest weight of the evidence.

■■ The Board first argues that its ruling that the injury was non-duty related is supported by the evidence because the only objective evidence of disability is the presence of osteoarthritis, common for a man Wagner's age. The evidence depositions of four expert witnesses were admitted into evidence. Dr. Kuhlman and Dr.

Rogers testified that Wagner was fit for duty, while Dr. Bassman and Dr. London testified that Wagner was disabled and should not return to police work. Dr. Tatkow's report indicated the same. Further, the latter three all testified that there was a causal relationship between Wagner's disability and his work-related injuries. Dr. Rogers, who testified that Wagner was not disabled, conceded that Wagner could not pass a preemployment physical. Although he took X rays, Dr. Kuhlman did not review any of Wagner's medical records in reaching his conclusion that Wagner was not disabled. Having accepted the testimony of Dr. London, Dr. Bassman, and Dr. Tatkow that Wagner was disabled, we find it difficult to understand that the Board would reject their opinion that the disability arose from work-related injuries and conclude that it was the result of an arthritic condition common for a middle-aged man. Such a conclusion was contrary to the manifest weight of the evidence, and the trial court was correct in so finding.

We next address the Board's contention that its finding that Wagner's disability was non-duty related is supported by the evidence because it was not clear that Wagner's disability was caused by his March 20, 1986, injury. The Board maintains that the only X rays discussed by Bassman and London were the X rays of the left knee taken on May 31, 1986, and that those X rays showed degenerative arthritis. Dr. Bassman testified that the degenerative arthritis could not have been caused by the May 27, 1986, injury, and this testimony was not contradicted by any of the other medical experts. The Board maintains that the March 20, 1986, injury was not duty related. The Board's argument ignores the fact that Dr. London performed surgery on Wagner's left knee to remove cartilage which was torn by the May 27, 1986, accident. Neither Dr. London's nor Dr. Bassman's opinion was based solely on the March 20, 1986, injury. The question we must determine is whether these injuries were duty related.

■ Section 5—113 of the Illinois Pension Code defines "Act of duty" as:

"Any act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect ***." Ill. Rev. Stat. 1987, ch. 108½, par. 5—113.

■ In *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund* (1986), 114 Ill. 2d 518, 502 N.E.2d 718, our su-

preme court held that the determination of whether a police officer was injured while performing an "act of duty" depended upon the capacity in which the officer was acting when injured. In *Johnson*, a police officer was on traffic control duty when a citizen called to him for assistance regarding a traffic accident. As the officer was crossing the street to respond, he slipped on wet pavement and fell. In holding that the officer's disability was the result of a duty-related injury, our supreme court stated that the Pension Code did not require that the officer be injured *by* an act of duty to be entitled to duty-related disability benefits, but only that the officer be disabled by an injury incurred in the *performance of an act of duty*. (*Johnson*, 114 Ill. 2d at 522, 502 N.E.2d at 720.) Further, the act in question need not be one unique to police officers.

> "Police officers assigned to duties that involve protection of the public discharge those duties by performing acts which are similar to those involved in many civilian occupations. Driving an automobile, entering a building, walking up stairs, and even crossing the street are activities common to many occupations, be it policeman or plumber." (*Johnson*, 114 Ill. 2d at 521-22, 502 N.E.2d at 720.)

The determinative question, the court ruled, is the capacity in which the officer was acting.

Citing *Morgan v. Retirement Board of the Policemen's Annuity & Benefit Fund* (1988), 172 Ill. App. 3d 273, 526 N.E.2d 493, the Board argues that Wagner's injury was not duty related. In *Morgan*, a police officer was injured while attempting to sit down at a desk and fill out a police report when the chair rolled out from under him. The court in *Morgan* held that the injury was not duty related, finding that completing police reports did not inherently involve any special risk not ordinarily assumed by a citizen in the ordinary walks of life. In reaching this conclusion, the court focused on the fact that, unlike the situation in *Johnson*, there were comparable civilian occupations which involved the completion of various types of reports.

Wagner was discharging his duty as a police officer on March 20, 1986, when he fell through the rotted porch plank and injured his left knee. While the act of walking across a porch is hardly unique to police officers, serving notices to appear generally is. Wagner was likewise performing an act of duty on May 27, 1986, when he stepped into a culvert offset while answering a call about a disturbance, a factual situation closely analogous to that in *Johnson*, and it was this latter injury which necessitated the surgery to Wag-

ner's left knee. The opinions of Drs. London, Bassman, and Tatkow were not based on the March 20, 1986, injury, but to the extent that this injury played a role in Wagner's disability, it too was duty related.

We conclude that the trial court was correct in reversing the Board's finding that Wagner's disability was not duty related. The decision of the circuit court of St. Clair County is affirmed.

Affirmed.

HARRISON and WELCH, JJ., concur.