# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Mingus v. Board of Trustees of the Police Pension Fund*, 2011 IL App (3d) 110098

| | |
|---|---|
| Appellate Court Caption | JOHN A. MINGUS, Plaintiff-Appellant, v. THE BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF PEORIA, an Illinois Administrative Agency, and JOSEPH SPEARS, RYAN ALWOOD, AL MISENER, JERRY MITCHELL, JOHN RENNICK, Members of the Board of Trustees, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-11-0098 |
| Filed | December 9, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The finding of the board of trustees of defendant police pension fund that plaintiff police officer suffered a nonduty injury when he stopped to assist a motorist who got stuck in snow when his vehicle slid off a road following a snowstorm was against the manifest weight of the evidence, since the officer was on duty in full uniform and in a squad car patrolling the roads at the time he came upon the stuck motorist, he was required to stop and attend to the situation and he was performing an act of duty when he and two citizens, who stopped to help, pushed the car back onto the road; therefore the board's finding was set aside and the cause was remanded to the board with directions to award plaintiff a line-of-duty disability pension. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 10-MR-287; the Hon. Michael E. Brandt, Judge, presiding. |

| | |
|---|---|
| Judgment | Circuit court reversed; Board's ruling set aside; and cause remanded to the Board with directions. |
| Counsel on Appeal | Ronald L. Hanna (argued), of Hanna & Hanna, P.C., of Peoria, for appellant. |
| | Robert H. Jennetten (argued) and Jennifer L. Morris, both of Quinn, Johnston, Henderson, Pretorius & Cerulo, of Peoria, for appellees. |
| Panel | PRESIDING JUSTICE CARTER delivered the judgment of the court, with opinion. |
| | Justices Lytton and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff, John A. Mingus, a Peoria police officer who was injured on duty while trying to push a motorist's stuck vehicle out of the snow, applied for a line-of-duty disability pension. After a hearing, the Board of Trustees of the Police Pension Fund of Peoria (the Board) found that Mingus's injury was not a result of the performance of an act of duty and awarded Mingus a nonduty disability pension instead. The trial court affirmed the Board's ruling upon administrative review. Mingus appeals, arguing that the Board erred in finding that his injury was not incurred in the performance of an act of duty and in denying his request for a line-of-duty disability pension on that basis. We reverse the trial court's ruling, set aside the Board's ruling, and remand this case with directions to the Board to award Mingus a line of duty disability pension.

¶ 2                                    FACTS
¶ 3     The issue presented in this appeal is very narrow. There is no dispute that Mingus is disabled for service as a police officer. The only finding in dispute is the Board's determination that Mingus's injury was not incurred as the result of the performance of an act of duty. The evidence presented at the hearing in that regard can be summarized as follows.
¶ 4     Mingus testified that he had been a police officer for about 30 years as of the date of the hearing. On December 8, 2006, Mingus was on duty during the day shift and was on patrol in full uniform and in a squad car. There was about six inches of snow on the ground from previous snowstorms. According to Mingus, it had snowed earlier that morning, it was cold out, and the roads were icy. The official weather data, however, showed that it had actually

snowed lightly the night before and that it had not snowed that morning, although it was foggy and some of the fog had turned to ice. At about 12:15 p.m., Mingus was on patrol heading northbound on Big Hollow Road in Peoria when he came across a vehicle that had gone off the road in the southbound lane. The vehicle was facing southbound with its back end off the road and stuck in the snow and its front end partially on the paved portion of the southbound lane. According to Mingus, the entire roadway in that area was covered with ice.

¶ 5 Mingus made a U-turn, activated his overhead squad car lights, pulled in behind and slightly to the left of the stuck vehicle, and parked in the southbound lane with his lights activated. The teenage driver told Mingus that the vehicle started slipping on the ice and that he lost control of the vehicle and went into the ditch. At some point, another vehicle with two occupants stopped to help. At the hearing in August of 2010, Mingus testified that the other vehicle stopped after he arrived. However, in his report that was prepared shortly after the incident in 2006, Mingus stated that the other vehicle was already there when he arrived. Mingus did not call for a tow truck or to check the amount of time it would take for a tow truck to arrive at that location. Mingus's squad car was equipped with a push bumper; however, Mingus was not able to get behind the stuck vehicle to push it with his squad car because of the snow and ice. In addition, although Mingus could have used his push bumper to push the vehicle from the front so that it was completely out of the roadway and all the way into the ditch, he did not do so.

¶ 6 Mingus decided to try to push the vehicle out of the snowbank by hand and back onto the roadway with the assistance of the two civilians who had stopped to help. Mingus testified that he did so because he wanted to get the vehicle out of that location as soon as possible due to the safety hazard. The road was icy in that area and although vehicles could pass in both directions, vehicles going southbound had to travel into the turn lane to pass the stuck vehicle and Mingus's squad car. Mingus did not remember how much traffic there was at that time but indicated that he did not have to direct traffic or call for a backup officer to assist him. Mingus acknowledged that he allowed the two civilians to help him despite the safety hazard, but stated that he kept watch to make sure that there were no oncoming vehicles while he and the two civilians attempted to push the stuck vehicle out of the ditch. Mingus also acknowledged that he never considered giving the teenage driver a ticket and stated that he did not want to make the young driver's problems worse. As Mingus pushed the vehicle, he felt immediate pain and a pop or a pull in his groin area. Mingus and the two civilians were able to push the stuck vehicle back onto the roadway. Mingus called dispatch to have the road salted but did not close the road or stay to warn motorists of the hazardous conditions. The pain that Mingus experienced in his groin area that day was later determined to be a hernia. Despite several attempts at corrective treatment, Mingus eventually was unable to perform his police officer duties because of the injury.

¶ 7 At the hearing, the Board asked Mingus several questions. The majority of the questions pertained to why Mingus did not take a different course of action, such as calling a tow truck, why Mingus did not ticket the driver, and why Mingus allowed the two civilians to assist him if the situation posed a safety hazard as he had claimed. At the conclusion of the hearing, the Board found that Mingus was disabled for service as a police officer, but that the disability was not the result of the performance of an act of duty. In reaching that conclusion, the Board

specifically found that Mingus's testimony was not credible regarding the safety hazard and the need for immediate action and that it appeared that Mingus had skewed his testimony in an attempt to support his claim. The Board denied Mingus's request for a line-of-duty disability pension and awarded Mingus a nonduty disability pension instead. Mingus filed a complaint for administrative review, and the trial court affirmed the Board's ruling. This appeal followed.

¶ 8                                           ANALYSIS

¶ 9       On appeal, Mingus argues that the Board erred in denying his request for a line-of-duty disability pension. Mingus asserts that the evidence showed that he was injured in the performance of an act of duty and that the Board incorrectly found that Mingus had suffered a nonduty injury. Mingus asserts further that the Board's decision was improper in that it was heavily based upon factors that should have been given no weight in a proper legal analysis of this issue. Mingus asks, therefore, that we set aside the Board's ruling.

¶ 10      In cases involving administrative review, the appellate court reviews the decision of the administrative agency, not the determination of the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006). The standard of review that applies on appeal is determined by whether the question presented is one of fact, law, or a mixed question of law and fact. *Marconi*, 225 Ill. 2d at 532. As to questions of fact, the agency's decision will not be reversed on appeal unless it is against the manifest weight of the evidence. *Marconi*, 225 Ill. 2d at 532. Questions of law, however, are subject to *de novo* review, and mixed questions of law and fact are reviewed under the clearly erroneous standard. *Marconi*, 225 Ill. 2d at 532. Regardless of which standard of review applies, the plaintiff in an administrative proceeding bears the burden of proof and will be denied relief if he or she fails to sustain that burden. *Marconi*, 225 Ill. 2d at 532-33.

¶ 11      In his brief on appeal, Mingus tries to frame the issue in such a manner as to invoke a more favorable *de novo* or clearly erroneous standard of review. Our supreme court, however, has already ruled upon this issue and has found that the determination of whether a person is entitled to line-of-duty disability pension benefits is a question of fact. See *Marconi*, 225 Ill. 2d at 534; *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 505 (2007). We are bound by that ruling. See *Angelini v. Snow*, 58 Ill. App. 3d 116, 119 (1978). Therefore, we will not reverse the Board's decision denying Mingus's request for line-of-duty disability pension benefits unless that decision is against the manifest weight of the evidence. See 735 ILCS 5/3-110 (West 2008); *Marconi*, 225 Ill. 2d at 531-34. For reversal to be warranted, it must be clearly evident from the record that the Board should have reached the opposite conclusion. See *Marconi*, 225 Ill. 2d at 534. That the opposite conclusion is reasonable or that this court might have ruled differently if it were the trier of fact is not enough to justify a reversal. See *Marconi*, 225 Ill. 2d at 534.

¶ 12      Turning to the merits, we note that the provisions governing the pensions of police officers must be liberally construed in favor of the applicant. See *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 114 Ill. 2d 518, 521 (1986). After all, the pension fund was created and maintained for the benefit of police officers, their surviving

spouses, children, and other dependents. See 40 ILCS 5/3-101 (West 2008); *Johnson*, 114 Ill. 2d at 521. For a police officer in a municipality with less than 500,000 inhabitants to obtain a line-of-duty disability pension, he must prove: (1) that he is disabled for service in the police department, and (2) that his disability was caused by sickness, accident, or injury incurred in or resulting from the performance of an act of duty. 40 ILCS 5/3-114.1(a) (West 2008); *Johnson*, 114 Ill. 2d at 522; *Merlo v. Orland Hills Police Pension Board*, 383 Ill. App. 3d 97, 100 (2008). A police officer who is injured in the performance of an act of duty is entitled to a disability pension equal to 65% of his salary at the date of suspension from duty (40 ILCS 5/3-114.1(a) (West 2008)), while an officer who is injured from a cause that is not an act of duty is only entitled to 50% of his salary (40 ILCS 5/3-114.2 (West 2008)).

¶ 13    As noted above, to qualify for a disability pension, an officer must be injured in the performance of an act of duty. 40 ILCS 5/3-114.1(a) (West 2008); *Merlo*, 383 Ill. App. 3d at 100. An act of duty requires more than simply being on duty at the time of the injury. *Merlo*, 383 Ill. App. 3d at 100. Rather, an act of duty is "[a]ny act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment; or any act of heroism performed in the city having for its direct purpose the saving of the life or property of a person other than the policeman." 40 ILCS 5/5-113 (West 2008); see also *Merlo*, 383 Ill. App. 3d at 100-01. Although an injury that results from risks comparable to those risks encountered in a civilian occupation does not qualify as an act of duty (*Merlo*, 383 Ill. App. 3d at 101), the term "special risk" does not encompass only inherently dangerous activities (*Johnson*, 114 Ill. 2d at 521). As our supreme court stated in *Johnson*:

"Police officers assigned to duties that involve protection of the public discharge those duties by performing acts which are similar to those involved in many civilian occupations. Driving an automobile, entering a building, walking up stairs, and even crossing the street are activities common to many occupations, be it policeman or plumber.

There can be little question, police officers assigned to duties that involve protection of the public discharge their responsibilities by performing acts which are similar to those involved in many civilian occupations. The crux is the capacity in which the police officer is acting.

When a policeman is called upon to respond to a citizen, he must have his attention and energies directed towards being prepared to deal with any eventuality.

Additionally, unlike an ordinary citizen, the policeman has *no* option as to whether to respond; it is his duty to respond regardless of the hazard ultimately encountered. In the case at bar, at the time of his disabling injury, the plaintiff was discharging his sworn duties to the citizens of Chicago by responding to the call of a citizen to investigate an accident. There is no comparable civilian occupation to that of a traffic patrolman responding to the call of a citizen.

The defendant's ultimate reliance on the fact that the plaintiff was 'traversing a street' when he was injured is misplaced. The provisions of section 5-154 of the Illinois Pension

Code [citation] conferring the right to duty-disability benefits do not require that an officer be injured *by* an act of duty. Rather, the duty disability is awarded when an officer is 'disabled *** as the result of injury incurred *** *in the performance of an act of duty*.' *** [Citation.] In the plaintiff's case, the act of duty was the act of responding to the call of a citizen for assistance. In performing that act, he was injured.

The defendant's interpretation envisions a police officer involved in a gun battle, a high-speed car chase, or some other obviously dangerous situation in order to qualify for duty-disability benefits. This is an overly restrictive and unrealistic interpretation. If this court were to adopt the defendant's narrow reading of section 5-113, it could discourage police officers from the dedicated and enthusiastic performance of their duties, to the detriment of all the citizens of Chicago." (Emphases in original.) *Johnson*, 114 Ill. 2d at 521-23.

¶ 14    After reviewing the record in the present case and applying the legal principles set forth above, we conclude that the Board's finding–that Mingus's injury was not caused in the performance of an act of duty–is against the manifest weight of the evidence. The undisputed facts show that at the time of the injury, Mingus was on duty in full uniform and in a squad car patrolling the roads. During that patrol, Mingus came across a young driver who had skidded off the road in an icy area and gone into the ditch. The front of the driver's vehicle remained on a portion of the paved roadway. Unlike an ordinary citizen, as a police officer, Mingus was required to stop and attend to the situation. See *Johnson*, 114 Ill. 2d at 521-23. Thus, at the time of the injury, Mingus was performing an act of duty. See *Johnson*, 114 Ill. 2d at 523 (police officer, who was injured when he slipped and fell while walking across the street to respond to a citizen's request for assistance regarding a traffic accident, was injured in the performance of an act of duty); *Merlo*, 383 Ill. App. 3d at 102-03 (police officer, who responded to a citizen's call of mischievous juvenile activity and was injured when he attempted to remove concrete parking blocks that juveniles had stacked in parking lot, was injured in the performance of the act of duty, even though city's department of public works would have removed the blocks upon request); *Wagner v. Board of Trustees of Police Pension Fund*, 208 Ill. App. 3d 25, 29-30 (1991) (police officer, who was injured when his leg went through a rotted porch that he was walking across while attempting to serve notice and again when he stepped into a culvert offset while answering a call about a disturbance, was injured in the performance of an act of duty); *Sarkis v. City of Des Plaines*, 378 Ill. App. 3d 833, 840-42 (2008) (police officer, who injured his shoulder while attempting to place support block into railroad crossing gate, was injured in the performance of an act of duty, even though civilians were trained to perform same function, evidence was not clear whether officer responded to situation or merely came across situation while on patrol, and there was no indication whether situation was obstructing traffic); *Alm v. Lincolnshire Police Pension Board*, 352 Ill. App. 3d 595, 601-03 (2004) (police officer, who was assigned to bike patrol and whose knee was injured over time in riding police bicycle, was injured in the performance of an act of duty).

¶ 15    Because Mingus's injury resulted from the performance of an act of duty, he is entitled to a line-of-duty disability pension. While it is true that ordinary citizens at times stop during the winter to help motorists that have become stuck and that tow-truck companies are also

available to assist motorists in such a situation, those facts, while relevant, are not dispositive of the issue that was before the Board. See *Sarkis*, 378 Ill. App. 3d at 840-42. In addition, it appears from the record that the Board's focus at the hearing was misplaced. The Board lost sight of the fact the Mingus was required to stop and assist the motorist and instead focused on the alternatives available to Mingus to address the situation, after he stopped to assist. Although a credibility determination by the Board will often be dispositive of the issue in a case such as this, here the Board's finding, that Mingus's testimony was not credible as to the need for immediate action for safety reasons, went to an issue that was not material. It does not matter whether Mingus was incorrect or even incredible in his assessment of the situation and decision that immediate action was necessary. Rather, what is important for our determination here is that as a police officer, Mingus was required to stop and assist the stuck motorist. See *Johnson*, 114 Ill. 2d at 521-23. Everything that occurred after that point was merely a matter of Mingus exercising his discretion in how best to handle the situation. Thus, without question, Mingus was engaged in the performance of an act of duty at the time of the injury. To rule otherwise would be to adopt a view that is much narrower than that expressed by our supreme court in *Johnson*. See *Johnson*, 114 Ill. 2d at 521-23. It is not the precise physical act that controls but the capacity in which the officer was acting. *Johnson*, 114 Ill. 2d at 522. We conclude, therefore, that the Board's finding of a nonduty injury was against the manifest weight of the evidence.

¶ 16     For the foregoing reasons, we reverse the trial court's ruling, set aside the Board's ruling, and remand this case with directions to the Board to award Mingus a line of duty disability pension.

¶ 17     Circuit court reversed; Board's ruling set aside; and cause remanded to the Board with directions.