NOTICE
Decision filed 11/29/17. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2017 IL App (5th) 160344

NO. 5-16-0344

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| DAVID MARTIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-MR-404 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE POLICE | ) | |
| PENSION FUND OF THE VILLAGE OF SHILOH, | ) | |
| | ) | |
| Defendant-Appellant | ) | Honorable |
| | ) | Robert P. LeChien, |
| (The Village of Shiloh, Intervener-Appellant). | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Justices Chapman and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, David Martin, applied to the Board of Trustees of the Police Pension Fund of the Village of Shiloh, Illinois (Board), for a line-of-duty disability pension pursuant to section 3-114.1 of the Illinois Pension Code (Code). 40 ILCS 5/3-114.1 (West 2012). Alternatively, plaintiff requested a not-on-duty disability pension pursuant to section 3-114.2 of the Code. 40 ILCS 5/3-114.2 (West 2012). The Board denied plaintiff a line-of-duty disability pension but granted him a not-on-duty disability pension.

¶ 2    Plaintiff sought administrative review of the Board's decision in the circuit court of St. Clair County, naming the Board as a defendant. The Village of Shiloh intervened in the

1

proceedings. The circuit court reversed the Board's decision. On appeal, the Board argues it appropriately denied plaintiff a line-of-duty disability pension because plaintiff was not performing an "act of duty" when he was injured. For the following reasons, we affirm the circuit court's judgment reversing the Board.

¶ 3                                     BACKGROUND

¶ 4     Plaintiff was a detective employed by the Village of Shiloh Police Department. On May 25, 2012, while riding as a passenger in the front seat of an unmarked squad car, plaintiff was injured in an automobile accident after the squad car, which was stopped at a stoplight, was rear-ended by another vehicle. Plaintiff sustained cervical spine injuries in his neck and back. There is no dispute regarding the permanent disabilities plaintiff incurred as a result of the accident. There is also no dispute that plaintiff was on duty when the accident occurred. Specifically, plaintiff was returning to the Shiloh police department from the St. Clair County courthouse, where he was conducting police work with the State's Attorney's office. This work included obtaining subpoenas for an ongoing investigation and filing traffic tickets and other citations.

¶ 5     Plaintiff is a fully vested member in the Village of Shiloh Police Pension Fund. On July 15, 2013, petitioner filed an application for disability with the Board, seeking a line-of-duty disability pursuant to section 3-114.1 of the Code. 40 ILCS 5/3-114.1 (West 2012). The Village of Shiloh subsequently filed a motion to intervene in the proceedings, which was allowed without objection.

¶ 6     An administrative hearing was held before the Board on August 11, 2015, where plaintiff presented evidence and testimony in support of his application for a line-of-duty disability. Additionally, pursuant to the applicable provisions of the Code, the Board considered the medical reports of three licensed physicians who specialize in the treatment and examination of

2

cervical spine injuries. 40 ILCS 5/3-115 (West 2012). In their medical reports, the physicians opined that plaintiff suffered disabling injuries as a result of the accident that would prevent him from performing the duties of a police officer. As previously stated, the parties do not dispute plaintiff suffered disabling injuries. Also at the hearing, plaintiff orally moved to amend his application, requesting, in the alternative, a not-on-duty disability pursuant to section 3-114.2 of the Code. 40 ILCS 5/3-114.2 (West 2012).

¶ 7    The Board entered an order denying plaintiff's request for a line-of-duty disability pension on October 19, 2015, finding plaintiff failed to meet his burden that he sustained a line-of-duty disability under section 3-114.1 of the Code. 40 ILCS 5/3-114.1 (West 2012). Instead, the Board concluded plaintiff was entitled to a not-on-duty disability pension pursuant to section 3-114.2 of the Code. 40 ILCS 5/3-114.2 (West 2012). In reaching its conclusion, the Board noted that plaintiff's request for a line-of-duty disability pension necessitates a determination of whether plaintiff was performing an "act of duty" as required for entitlement to a line-of-duty disability pension under section 3-114.1 of the Code. 40 ILCS 5/3-114.1 (West 2012). The Board outlined several factors in support of its conclusion that plaintiff failed to establish his disability resulted from the performance of an "act of duty":

> Plaintiff had completed his business with the St. Clair County State's Attorney's office at the St. Clair County courthouse and was returning to the Shiloh police department at the time of the accident.

> Neither the squad car nor its occupants were in apprehension of a suspect at the time of the accident, nor were the officers summoned to assist a citizen in need.

3

At the time of the accident, the squad car was merely at a complete stop. Such an incident is one repeated and experienced numerous times by many citizens within the community.

Since the Board concluded plaintiff was not performing an "act of duty" at the time of the accident, it denied his application for a line-of-duty disability pension.

¶ 8 Plaintiff timely filed a petition for judicial review of the Board's order on November 9, 2015, in the circuit court of St. Clair County. The parties submitted briefs to the trial court, and oral arguments were heard on May 18, 2016. After considering the parties' arguments, the trial court entered an order reversing the Board's decision on July 12, 2016. The trial court concluded that our supreme court's ruling in *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 114 Ill. 2d 518 (1986), controlled the facts of this case. Specifically, the court stated, "[h]aving considered the capacity in which [plaintiff] was injured, the Court finds he is entitled to" a line-of-duty disability pension.

¶ 9 This appeal followed.

¶ 10                                    ANALYSIS

¶ 11 The Board contends it appropriately denied plaintiff a line-of-duty pension because plaintiff was not performing an "act of duty" at the time of the accident, a requirement for entitlement to a line-of-duty disability under section 3-114.1 of the Code. 40 ILCS 5/3-114.1 (West 2012). In administrative cases, we review the decision of the administrative agency, not that of the trial court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006). We are limited to considering the evidence presented at the administrative hearing and may not hear additional evidence for or against the agency's decision. *Marconi*, 225 Ill. 2d at 532.

4

¶ 12    The standard of review employed in reviewing administrative decisions depends upon the question presented. *Marconi*, 225 Ill. 2d at 532. A question of fact is reviewed under the manifest weight of the evidence standard, a question of law is reviewed *de novo*, and a mixed question of law and fact is reviewed under the clearly erroneous standard. *Marconi*, 225 Ill. 2d at 532. Here, the relevant facts are undisputed, and the parties' dispute turns on the interpretation of "act of duty" as that term is defined under section 3-114.1 of the Code. 40 ILCS 5/3-114.1 (West 2012). Accordingly, because the interpretation of the relevant provisions of the Code presents a question of law, our review is *de novo*. *Fedorski v. Board of Trustees of the Aurora Police Pension Fund*, 375 Ill. App. 3d 371, 373 (2007). We further note that under any standard of review, a plaintiff to an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden. *Marconi*, 225 Ill. 2d at 532-33.

¶ 13    Initially, we observe that the primary consideration in construing a statute is to determine and give effect to the intent of the legislature. *Jones v. Board of Trustees of the Police Pension Fund*, 384 Ill. App. 3d 1064, 1068 (2008). Legislative intent is best derived from the statutory language itself, which, if unambiguous, should be enforced as written. *Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund*, 216 Ill. 2d 590, 595 (2005). However, if the statutory language is susceptible to more than one interpretation, legislative intent may be ascertained by considering the act as a whole, its nature, its object, and the consequences resulting from different constructions. *Taddeo*, 216 Ill. 2d at 595-96. Importantly, a court must consider the statute in its entirety. *Jones*, 384 Ill. App. 3d at 1068. It is well settled that to the extent there is any question regarding legislative intent and the clarity of the language of a pension statute, it must be liberally construed in favor of the rights of the pensioner. *Prazen v. Shoop*, 2013 IL 115035, ¶ 39.

5

¶ 14    As we set forth above, this case involves plaintiff's application for an award of a line-of-duty disability pension. Alternatively, plaintiff requested an award of a not-on-duty disability pension. We outline those relevant sections of the Code as follows.

¶ 15    Section 3-114.1 of the Code provides for a pension equal to 65% of the officer's salary if the officer becomes disabled as a result of "the performance of an act of duty." 40 ILCS 5/3-114.1 (West 2012). Specifically, section 3-114.1 provides:

"(a) If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a disability retirement pension equal to the greatest of (1) 65% of the salary attached to the rank on the police force held by the officer at the date of suspension of duty or retirement, (2) the retirement pension that the police officer would be eligible to receive if he or she retired (but not including any automatic annual increase in that retirement pension), or (3) the pension provided under subsection (d), if applicable.

A police officer shall be considered 'on duty' while on any assignment approved by the chief of the police department of the municipality he or she serves, whether the assignment is within or outside the municipality." 40 ILCS 5/3-114.1(a) (West 2012) (entitled "Disability pension—Line of duty").

¶ 16    In contrast, section 3-114.2 of the Code provides that if a police officer "becomes disabled as a result of any cause other than the performance of an act of duty," the officer is "entitled to a disability pension of 50% of the salary attached to the officer's rank on the police

6

force at the date of suspension of duty or retirement." 40 ILCS 5/3-114.2 (West 2012) (entitled "Disability pension—Not on duty").

¶ 17 For purposes of article 3 of the Code (pertaining to police pension funds in municipalities with populations less than 500,000—which applies to the instant case), Illinois courts have adopted the definition of "act of duty" as that term is defined in article 5 of the Code (pertaining to police pension funds in municipalities with populations exceeding 500,000):

" 'Act of duty': Any act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment; or any act of heroism performed in the city having for its direct purpose the saving of the life or property of a person other than the policeman." 40 ILCS 5/5-113 (West 2012).

¶ 18 Illinois courts recognize that an officer does not perform an "act of duty" merely by being on duty at the relevant time. *Sarkis v. City of Des Plaines*, 378 Ill. App. 3d 833, 837 (2008). Further, it is well settled that not all police functions involve "special risk." *Jones*, 384 Ill. App. 3d at 1070. However, as our supreme court has observed, "special risk" is not restricted to " 'inherently dangerous' activities." *Johnson*, 114 Ill. 2d at 521.

¶ 19 *Johnson* involved a police officer who slipped and injured himself while crossing an intersection from his assigned post in response to a citizen's request for assistance in a traffic accident. *Johnson*, 114 Ill. 2d at 520. Our supreme court concluded the officer's actions were an "act of duty" within the meaning of the Code because the officer was discharging his sworn duties by responding to a citizen's call when he suffered the injury. *Johnson*, 114 Ill. 2d at 522. Our supreme court noted the officer had no choice but to respond, and further explained: "[t]he

7

crux is the capacity in which the police officer is acting" as opposed to the precise manner in which the officer was injured. *Johnson*, 114 Ill. 2d at 522.

¶ 20    In reaching its decision, our supreme court rejected the argument that the officer was not entitled to line-of-duty benefits because crossing the street did not involve a special risk:

"The defendant's ultimate reliance on the fact that the plaintiff was 'traversing a street' when he was injured is misplaced. The provisions of [the Code] conferring the right to duty-disability benefits do not require that an officer be injured *by* an act of duty. Rather, the duty disability is awarded when an officer is 'disabled *** as the result of the injury incurred *** *in the performance of an act of duty*.' (Emphasis added.) [Citation.] In the plaintiff's case, the act of duty was the act of responding to the call of a citizen for assistance. In performing that act, he was injured.

The defendant's interpretation envisions a police officer involved in a gun battle, a high-speed car chase, or some other obviously dangerous situation in order to qualify for duty-disability benefits. This is an overly restrictive and unrealistic interpretation. If this court were to adopt the defendant's narrow reading ***, it could discourage police officers from the dedicated and enthusiastic performance of their duties ***." (Emphases in original.) *Johnson*, 114 Ill. 2d at 522-23.

¶ 21    A string of appellate court decisions have followed *Johnson*. In *Wagner v. Board of Trustees of the Police Pension Fund*, 208 Ill. App. 3d 25 (1991), this court held that an officer who fell through a porch while serving a notice to appear was injured in the performance of an "act of duty" and, therefore, was entitled to a line-of-duty disability pension. Relying on *Johnson*, this court explained, "[t]he determinative question *** is the capacity in which the officer was acting." *Wagner*, 208 Ill. App. 3d at 29. This court concluded, "[w]hile the act of

8

walking across a porch is hardly unique to police officers, serving notices to appear generally is." *Wagner*, 208 Ill. App. 3d at 29.

¶ 22    In *Rose v. Board of Trustees of the Mount Prospect Police Pension Fund*, 2011 IL App (1st) 102157, the First District Appellate Court held an officer who was injured in an automobile accident while on patrol and driving his squad car was entitled to a line-of-duty disability pension. In this case, the pension board denied the officer line-of-duty disability benefits because it determined the officer was not involved in the investigation he undertook earlier in the day at the time of the accident. *Rose*, 2011 IL App (1st) 102157, ¶ 76. The pension board asserted the officer was merely driving his car at the time of the accident, which is an activity that does not involve any special risks. *Rose*, 2011 IL App (1st) 102157, ¶ 77. Upon affirming the trial court's reversal of the pension board's decision, the First District Appellate Court, relying on *Johnson*, concluded that regardless of whether the officer was continuing his investigation at the time of the accident, he was in full gear inside his squad car and was performing patrol duties, which required special skills not ordinarily encountered by normal citizens, namely " 'hav[ing] his attention and energies directed towards being prepared to deal with any eventuality.' " *Rose*, 2011 IL App (1st) 102157, ¶ 84 (quoting *Johnson*, 114 Ill. 2d at 522).

¶ 23    In *Jones*, 384 Ill. App. 3d 1064, the Fourth District Appellate Court held that a police officer who was injured in an automobile accident while driving a police van was entitled to line-of-duty disability benefits. The court rejected the pension board's argument that the officer only encountered the general risk associated with driving a car. *Jones*, 384 Ill. App. 3d at 1073. As the court noted, "even if driving a car involves only an ordinary risk, [the officer] was acting in a capacity that involved special risk when he was injured—routine patrol." *Jones*, 384 Ill. App. 3d at 1073. The court further explained that although the officer was not responding to a call at the

9

time of the accident, he faced special risks associated with being on patrol duty and "had to have his attention directed toward being prepared to deal with any eventuality." *Jones*, 384 Ill. App. 3d at 1074.

¶ 24   In *Alm v. Lincolnshire Police Pension Board*, 352 Ill. App. 3d 595 (2004), the Second District Appellate Court held that a police officer assigned to the department's bicycle patrol unit was entitled to a line-of-duty disability pension for a disabling injury where the officer underwent several surgical procedures on his knee after experiencing pain while pedaling a bicycle. The court concluded, "*Johnson* makes clear that the proper focus is on the *capacity* in which the officer is acting, not the precise act leading to injury." (Emphasis in original.) *Alm*, 352 Ill. App. 3d at 602. The court further concluded that an "officer performing duties involving special risks will be entitled to line-of-duty benefits even if the immediate cause of injury is an act involving only an ordinary risk." *Alm*, 352 Ill. App. 3d at 599.

¶ 25   In *Merlo v. Orland Hills Police Pension Board*, 383 Ill. App. 3d 97 (2008), the First District Appellate Court affirmed an award of line-of-duty disability benefits to a police officer who injured his back when attempting to remove concrete parking blocks after responding to a report of juveniles stacking parking blocks in a parking lot. In affirming the trial court's reversal of the pension board's decision to deny the officer a line-of-duty disability, the appellate court found the pension board's position focused only on the acts of the officer at the specific moment of injury and not on the capacity in which he performed those acts. *Merlo*, 383 Ill. App. 3d at 103. The court concluded that, although the officer did not confront the juveniles, he was acting in his capacity as a police officer and appropriately exercised his discretion when he attempted to remove the safety hazard created by the juveniles. *Merlo*, 383 Ill. App. 3d at 103.

10

¶ 26    In *Mingus v. Board of Trustees of the Police Pension Fund*, 2011 IL App (3d) 110098, the Third District Appellate Court concluded the pension board's finding that an officer's injury was not caused in the performance of an act of duty was against the manifest weight of the evidence. In that case, an officer who was on duty and patrolling the roadways observed a driver who skidded off the road in an icy area and went into a ditch. *Mingus*, 2011 IL App (3d) 110098, ¶ 14. The officer attended to the situation and was injured when attempting to push the car back to the road with the help of two other motorists who stopped to help. *Mingus*, 2011 IL App (3d) 110098, ¶ 14. In reversing the pension board's decision to deny the officer line-of-duty disability benefits, the appellate court noted, "[t]he Board lost sight of the fact [that the officer] was required to stop and assist the motorist and instead focused on the alternatives available to [the officer] to address the situation," such as a tow truck. *Mingus*, 2011 IL App (3d) 110098, ¶ 15. Citing *Johnson*, the court emphasized, "[i]t is not the precise physical act that controls but the capacity in which the officer was acting." *Mingus*, 2011 IL App (3d) 110098, ¶ 15.

¶ 27    *Sarkis*, 378 Ill. App. 3d 833, involved an on-duty police officer who was dispatched to a railroad crossing in which the gates were malfunctioning. When the officer lifted the railroad gate in an attempt to repair it, his foot slipped in mud and the crossing gate dropped onto his left shoulder. *Sarkis*, 378 Ill. App. 3d at 834-35. The pension board denied the officer's request for a line-of-duty disability pension after concluding the railroad crossing gate incident did not occur in the performance of an act of duty. *Sarkis*, 378 Ill. App. 3d at 835. In support of its decision, the pension board noted " 'non-sworn volunteers and ordinary citizens do frequently hold up railroad gates.' " *Sarkis*, 378 Ill. App. 3d at 835. The appellate court affirmed the trial court's reversal of the pension board's decision, concluding that "physically raising a railroad crossing gate is not an act performed by an ordinary person in his or her typical day." *Sarkis*, 378 Ill. App.

11

3d at 841. The appellate court also cited to *Johnson* in reaching its decision, noting "the touchstone of an 'act of duty' is not whether the officer is performing an act unique to his or her occupation but, rather, the capacity in which the officer is acting." *Sarkis*, 378 Ill. App. 3d at 838.

¶ 28    In light of the precedent established by our supreme court in *Johnson*, we find the Board erred in denying plaintiff's application for a line-of-duty disability pension. Here, plaintiff sustained injuries in an automobile accident during his shift while performing duties in furtherance of his job as a detective for the Village of Shiloh Police Department. The record shows that, prior to the accident, plaintiff was a passenger in a squad car that drove from the police department to the St. Clair County courthouse to meet with the State's Attorney's office in order to obtain subpoenas for an ongoing investigation. Plaintiff also filed traffic tickets and other citations at the courthouse. (The tickets filed by plaintiff produce fines that help the Village of Shiloh receive funds, and do not get processed unless a police officer or detective files them with the circuit clerk's office at the St. Clair County courthouse.) The duties performed by plaintiff are not delegated to any members of the general public. Further, because plaintiff was on duty at the time of the accident and was a passenger in a squad car, he was subject to attend to any other police responsibility if necessary.

¶ 29    As we discuss throughout this opinion, when determining whether an officer performed an "act of duty" within the meaning of the Code, "[t]he crux is the capacity in which the police officer is acting," not the precise manner in which the officer was injured. *Johnson*, 114 Ill. 2d at 522. Furthermore, as our supreme court indicates, " '[a] policeman is actually engaged in the performance of his duty for the protection of life and property whenever he is carrying out the official orders or requirements of his office.' " *Johnson*, 114 Ill. 2d at 523 (quoting *Blanchard v.*

12

*New Orleans Police Department*, 210 So. 2d 585, 588 (La. Ct. App. 1968)). Here, plaintiff was injured while he was performing police duties in furtherance of his job as a detective. Although plaintiff had already conducted his work at the St. Clair County courthouse and was on his way back to the police station at the time of the accident, he had to "have his attention and energies directed towards being prepared to deal with any eventuality." *Johnson*, 114 Ill. 2d at 522. For these reasons, plaintiff was engaged in the performance of an "act of duty" at the time of his injury. To rule differently would be to adopt a much narrower view than that expressed by our supreme court in *Johnson*. *Johnson*, 114 Ill. 2d at 521-23; *Mingus*, 2011 IL App (3d) 110098, ¶ 15. Applying the liberal construction of pension statutes in favor of the pensioner, we conclude plaintiff is entitled to a line-of-duty disability pension.

¶ 30    The Board cites to several decisions in support of its argument that it appropriately denied plaintiff a line-of-duty disability pension because plaintiff was not engaged in an act of duty when he sustained his injuries: *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533 (1997); *Morgan v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 172 Ill. App. 3d 273 (1988); *White v. City of Aurora*, 323 Ill. App. 3d 733 (2001); and *Fedorski*, 375 Ill. App. 3d 371. After careful review, we find these cases distinguishable from the case at bar.

¶ 31    *Robbins* examines the classification of an officer's stress as a psychological disability and encourages the awarding of a line-of-duty pension for stress if the conditions result from the performance of an act of duty. *Robbins*, 177 Ill. 2d at 544. Similar to the *Sarkis* court, which we discuss above, we question the Board's reliance on *Robbins*. As the *Sarkis* court notes, "*Robbins* and other precedent involving job-related stress, while well reasoned, are simply inapposite to

the instant case, which centers on a physical act that caused injury." *Sarkis*, 378 Ill. App. 3d at 841. Accordingly, we reject the Board's argument as it pertains to *Robbins*.

¶ 32    In *Morgan*, a police officer was injured while filling out paperwork inside the police station when he missed his chair and fell on the floor. *Morgan*, 172 Ill. App. 3d at 274. The *Morgan* court held the officer was not entitled to a line-of-duty disability pension because he did not sustain his injuries in the performance of an act of duty. *Morgan*, 172 Ill. App. 3d at 275. Specifically, the court explained, "we cannot say that completing police reports, albeit a function peculiar to police officers, inherently involves special risk not ordinarily assumed by a citizen in the ordinary walks of life." *Morgan*, 172 Ill. App. 3d at 276-77. The court further distinguished its case from *Johnson*, citing to Justice Ryan's dissent in *Johnson*, which noted " 'almost all policemen, *excepting those engaged in clerical duties*, who are injured at work will be entitled to the enhanced pension.' " (Emphasis in original.) *Morgan*, 172 Ill. App. 3d at 277 (quoting *Johnson*, 114 Ill. 2d at 525 (Ryan, J., dissenting, joined by Miller, J.)).

¶ 33    Unlike *Morgan*, plaintiff in this case was not performing a clerical duty at a desk when he sustained his injuries. Rather, plaintiff was in a squad car performing duties in furtherance of his job as a detective. As previously stated, plaintiff was in a squad car on his way back to the police station after he obtained subpoenas for an ongoing investigation and filed traffic citations at the St. Clair County courthouse. Such duties are not delegated to any members of the general public. Further, because he was in a squad car at the time of the accident, plaintiff was subject to attend to any other police responsibility if necessary. *Johnson*, 114 Ill. 2d at 522. For these reasons, we reject the Board's argument as it pertains to *Morgan*.

14

¶ 34    In *White*, a police officer was injured while exiting his squad car to place a parking citation on the windshield of an illegally parked car. *White*, 323 Ill. App. 3d at 734. In reaching its decision denying the officer line-of-duty disability benefits, the *White* court relied on *Morgan*:

"Just as filling out police reports does not involve a special risk, neither does exiting a car to place a traffic ticket on a windshield. Both filling out a report and exiting a car to place a notice or flyer are acts that ordinary citizens assume. Numerous civilian occupations involve filling out citations and placing them where the violator will see them. In fact, [the officer] acknowledged that parking regulations are enforced by Aurora employees who are not police officers." *White*, 323 Ill. App. 3d at 736.

¶ 35    In contrast to the instant case, *White* involved a police department that employed civilians to issue parking citations in addition to police officers. Here, the duties plaintiff performed immediately prior to returning to the police station were not delegated to any members of the general public, and could only be effectuated by a police officer. Accordingly, we reject the Board's argument.

¶ 36    Finally, the Board asserts this case is similar to *Fedorski*, 375 Ill. App. 3d 371. We disagree. In *Fedorski*, the plaintiff, an evidence technician, was riding as a passenger in the backseat of an unmarked squad car when it was struck from behind while the squad car was stopped as a red light. *Fedorski*, 375 Ill. App. 3d at 372. At the time of the accident, the plaintiff was returning to the police station after assisting in a murder investigation. *Fedorski*, 375 Ill. App. 3d at 372. The plaintiff also had tasks related to the investigation that he needed to complete upon his return to the police station. *Fedorski*, 375 Ill. App. 3d at 372.

¶ 37    The Second District Appellate Court concluded that the plaintiff was not entitled to a line-of-duty disability because he was not acting in a capacity involving a special risk when he

15

was injured. *Fedorski*, 375 Ill. App. 3d at 375. The court held that because it was uncertain whether evidence technicians faced risks while photographing lineups and because civilians may perform such work, the officer faced no risks unique to an officer. *Fedorski*, 375 Ill. App. 3d at 375. Therefore, the court concluded the officer was not performing an act of duty when he was injured. *Fedorski*, 375 Ill. App. 3d at 375. However, the court noted:

"Had [the officer] been acting in a capacity involving a special risk when he was injured, he would have been entitled to a line-of-duty disability pension even though the immediate cause of the injury was an act—riding in an automobile—involving only ordinary risk." *Fedorski*, 375 Ill. App. 3d at 375.

¶ 38    As we previously discussed, a police officer or detective faces special risks when driving in a squad car, as they must have their attention and energies directed towards being prepared to confront any eventuality. *Johnson*, 114 Ill. 2d at 522. Here, unlike the plaintiff in *Fedorski*, who was carrying out the indistinct duties of an evidence technician, plaintiff was injured while acting in his capacity as a detective engaged in a function unique to police officers. Accordingly, we reject the Board's argument as it pertains to *Fedorski*.

¶ 39                                    CONCLUSION

¶ 40    For the reasons stated, we affirm the circuit court's judgment reversing the Board.


¶ 41    Affirmed.

16

2017 IL App (5th) 160344

NO. 5-16-0344

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| DAVID MARTIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 15-MR-404 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE POLICE | ) | |
| PENSION FUND OF THE VILLAGE OF SHILOH, | ) | |
| | ) | |
| Defendant-Appellant | ) | Honorable |
| | ) | Robert P. LeChien, |
| (The Village of Shiloh, Intervener-Appellant). | ) | Judge, presiding. |

_____

**Opinion Filed:**       November 29, 2017

_____

**Justices:**       Honorable Richard P. Goldenhersh, J.

                    Honorable Melissa A. Chapman, J., and
                    Honorable Judy L. Cates, J.,
                    Concur

_____

**Attorney**        Dennis J. Orsey, Dennis J. Orsey, P.C., 3388 Maryville Road, Suite A,
**for**             Granite City, IL 62040
**Appellants**

_____

**Attorneys**       Edward J. Kionka, Lesar Law Building, MS 6804, 1150 Douglas Drive,
**for**             Carbondale, IL 62901; Jon Rosenstengel, Bonifield & Rosenstengel,
**Appellee**        P.C., 16 East Main Street, Belleville, IL 62220

_____